OPINION
 

 Per Curiam.:
 

 This is a multimillion dollar divorce case involving a premarital agreement. Appellant Janet Kantor challenges (1) the district court’s denial of her motion to amend her answer; (2) the district court’s failure to determine the validity and substantive fairness of the premarital agreement before applying its provisions; and (3) the district court’s award of attorney’s fees. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Dr. Gary Kantor is a medical doctor specializing in nephrology, which is the treatment of kidney disorders and diseases. Gary’s practice, incorporated as a professional corporation, is named Kantor Nephrology Consultants, Ltd. (“KNC”). Gary also has formed separate business entities which provide kidney dialysis services. These businesses are collectively known as the Renal Dialysis Center (“RDC”). Because RDC is not a professional corporation, RDC cannot collect revenue for a physician’s services. Therefore, when Gary renders personal medical treatment at an RDC facility, his services are billed through KNC.
 

 Before Gary married Janet on November 22, 1990, the parties entered into a premarital agreement. Gary and Janet were represented by separate counsel, although Gary paid Janet’s attorney for his services. Under the premarital agreement, Gary and Janet agreed that the income of the other party would be that party’s separate property, except as otherwise provided in the agreement. Paragraph 2.2 contained Janet’s acknowledgment, which stated:
 

 
 *889
 
 WIFE acknowledges that she understands that, except for this AGREEMENT, the
 
 earnings and income
 
 resulting from the personal services, skill, effort and work of HUSBAND after the parties’ marriage would be community property in which she may have an interest, but that by this AGREEMENT such
 
 earnings and income
 
 are made HUSBAND’S separate property, except as specifically set forth herein to the contrary. WIFE further acknowledges that the income from HUSBAND’S separate property is his separate property.
 

 (Emphasis added.)
 

 The agreement designated some of Gary’s earnings as community property. Paragraph 6.1 of the agreement stated, in part, that:
 

 |T]t is agreed that any and all salary or fees received by HUSBAND in exchange for his provision of personal medical care and services (as a practicing physician) shall be community property. The parties acknowledge that, presently, all such salary or fees come to HUSBAND in the form of a salary from Kantor Nephrology Consultants, Limited. . . .
 

 Janet contends that she was never informed as to the nature and amount of Gary’s earnings, specifically his income from RDC. She further contends that, based on Paragraph 6.1 and Gary’s representations, she understood that all of Gary’s salary and income were derived from KNC, and were therefore community property.
 

 Gary, on the other hand, claims that, prior to executing the premarital agreement, he informed Janet that his expected income from KNC was in excess of $500,000.00 per year and that his income from RDC would be substantially higher than $500,000.00 per year. Exhibits to the premarital agreement indicate that Janet had assets worth over $7,000,000.00 and that Gary had assets worth nearly $22,000,000.00. Gary’s stock ownership in KNC and RDC were listed as separate assets in these exhibits.
 

 Gary filed for divorce on October 22, 1997. The second paragraph of the complaint alleged that the premarital agreement was valid and enforceable. Janet’s original answer denied the allegations contained in the second paragraph of the complaint on the ground that Janet was “without sufficient information with which to form a belief as to the truth of said allegations.”
 

 Because Gary’s attorneys in the divorce proceedings were the same attorneys who represented Gary in the preparation and drafting of the premarital agreement, they were concerned that they would be disqualified as trial counsel if called as witnesses concerning the validity of the premarital agreement. One of Gary’s attorneys then discussed the issue with Janet’s attorney. On February 13, 1998, Janet filed an amended answer, which admit
 
 *890
 
 ted the validity of the premarital agreement. This resolved any concerns regarding the disqualification of Gary’s attorneys.
 

 A one-day bench trial was scheduled for August 14, 1998. Prior to that, on August 5, 1998, one of Gary’s attorneys deposed Janet’s accounting expert. During the deposition, the expert presented two reports regarding his calculations of community income. The first report concerned only income from KNC during the marriage. A second report included Gary’s income from RDC earned during the marriage, which the expert contended should also be included as community property. Apparently this was the first time it was suggested that Gary’s income from RDC should be considered community property. As a result, the original trial date was vacated and trial was re-set for November 20, 1998.
 

 On September 21, 1998, Janet’s attorney requested depositions from Gary’s attorneys. On September 30, 1998, Gary filed a motion for a protective order, seeking to prevent his attorneys from being deposed. Later that same day, Janet filed a motion to amend her amended answer in order to challenge the validity of the premarital agreement. Gary filed a written opposition to the motion. The district court thereafter denied the motion.
 

 The trial was held on November 20, 1998. Janet’s accounting expert testified that the community was due more than $5,000,000.00 as a result of Gary’s income from RDC during the marriage. The district court disagreed and ruled that Gary’s income from RDC was not derived from the rendering of personal services as a practicing physician, and therefore was not community property under Paragraph 6.1 of the agreement.
 

 During trial, Gary requested attorney’s fees arising out of his opposition to Janet’s motion to amend her amended answer. The district court stated that Gary would have to file a motion for attorney’s fees. Paragraph 10.2 of the premarital agreement states that “[t]he parties confirm and agree that, in the event of a dissolution of the parties’ marriage, neither party shall make a claim for attorneys’ fees against the other, whether by way of preliminary motion or at the time of trial.” However, Paragraph 12.5 contains a specific indemnity provision which states that:
 

 Each party hereunder shall be indemnified for and against all loss, damages, costs and expenses (including, but not limited to, attorneys’ fees and costs incurred at the trial and appellate levels) as a result of or arising from any demand, claim or suit by or on behalf of either party hereto contesting or attempting to modify, change, set aside, nullify, or cancel this AGREEMENT or any part or provision of this AGREEMENT for any reason whatsoever. The indemnity
 
 *891
 
 provisions of this AGREEMENT shall specifically apply to costs, expenses and attorneys’ fees, as defined herein, incurred by a party successfully seeking enforcement of this AGREEMENT or any provision hereof.
 

 The findings of fact, conclusions of law and decree of divorce was filed on December 23, 1998. The district court’s order stated that it would defer ruling on the issue of Gary’s request for attorney’s fees in order to give the parties an opportunity to settle this issue. Janet filed her notice of appeal on January 21, 1999. On January 27, 1999, Gary filed a motion for attorney’s fees pursuant to the indemnity provision in the premarital agreement. Janet objected to this motion, in part, on the ground that the district court lacked jurisdiction to award attorney’s fees after she filed her notice of appeal. The district court ruled that it retained jurisdiction and awarded Gary attorney’s fees in the amount of $19,580.00. Janet then appealed the district court’s order granting Gary attorney’s fees. By order of this court, we consolidated Janet’s appeals.
 

 DISCUSSION
 

 Whether the district court abused its discretion by denying Janet’s motion to amend her amended answer
 

 After a responsive pleading is filed, a party may amend his or her pleading “only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.” NRCP 15(a). Although the rule states that leave to amend shall be given when justice so requires, “[t]his does not . . . mean that a trial judge may not, in a proper case, deny a motion to amend. If that were the intent, leave of court would not be required.” Stephens v. Southern Nevada Music Co., 89 Nev. 104, 105, 507 P.2d 138, 139 (1973). Sufficient reasons to deny a motion to amend a pleading include undue delay, bad faith or dilatory motives on the part of the movant.
 
 See id.
 
 at 105-06, 507 P.2d at 139. Furthermore, “[a] motion for leave to amend pursuant to NRCP 15(a) is addressed to the sound discretion of the trial court, and its action in denying such a motion will not be held to be error in the absence of a showing of abuse of discretion.” Connell v. Carl’s Air Conditioning, 97 Nev. 436, 439, 634 P.2d 673, 675 (1981).
 

 In this case, the district court denied Janet’s motion for leave to amend her amended answer because the parties relied on the validity of the premarital agreement, the motion was filed on the “eve” of trial and Janet was dilatory in requesting leave to
 
 *892
 
 amend. We conclude that the district court did not abuse its discretion by denying Janet’s motion for leave to amend her amended answer.
 

 The district court found that both parties relied on the validity of the agreement. Janet received $100,000.00 under the terms of the agreement. Additionally, Gary, in reliance on the validity of the agreement, continued to employ the same attorneys who drafted the agreement. Since Gary’s attorneys were involved in the drafting and execution of the premarital agreement, they would have become key witnesses at the divorce trial had Janet been allowed to challenge the validity of the premarital agreement. Therefore, Janet’s amendment to her amended answer would probably have resulted in the disqualification of Gary’s attorneys under SCR 178, which generally prohibits a lawyer from trying a case if the lawyer is a necessary witness in the case.
 
 [2]
 
 By October of 1998, when Janet sought to amend her answer to challenge the validity of the premarital agreement, Gary had expended substantial sums in legal fees.
 

 Janet’s counsel informed the court that she would not request the disqualification of Gary’s attorneys. However, Janet cites no legal authority for the proposition that the opposing party may waive a violation of an ethical rule such as SCR 178. Therefore, we conclude that the district court’s concern about the disqualification of Gary’s attorneys was reasonable.
 

 After eleven months had passed since the filing of the complaint, Janet filed a motion to amend her amended answer seven weeks before trial. The district court found that Janet filed the motion on the “eve” of trial. Although Janet’s counsel informed the court that she would not request a continuance of the trial, we agree with the district court that, in this multimillion dollar divorce case, a challenge to the validity of the premarital agreement made seven weeks before trial would have necessitated an extensive delay.
 

 The district court also found that Janet was dilatory in requesting leave to amend her amended answer. Janet contends that upon learning that Gary was attempting to differentiate between his income from KNC and his income from RDC, Janet promptly
 
 *893
 
 sought to amend her answer in order to challenge the validity of the premarital agreement. Janet also contends that she did not learn that Gary received income from sources other than KNC until after her expert analyzed financial documents obtained through discovery.
 

 We conclude that the district court’s finding that Janet was dilatory in requesting leave to amend is supported by substantial evidence. The exhibits attached to the premarital agreement listed KNC and RDC as separate business entities. Also, Paragraph 6.1 of the agreement indicated that Gary’s income for “personal medical care and services (as a practicing physician) shall be community property.” This paragraph further explained that “all such salary or fees come to HUSBAND in the form of a salary from [KNC].” Furthermore, Janet was represented by counsel when she executed the agreement. This evidence indicates that Janet was aware that Gary’s income from RDC was separate from income from KNC. Therefore,' we conclude that the district court’s finding that Janet was dilatory in her request for leave to amend was reasonable.
 

 In sum, we conclude that the district court did not abuse its discretion by denying Janet’s motion for leave to amend her amended answer.
 

 Whether the district court erred by applying the terms of the premarital agreement
 

 Janet contends that the district court erred by applying the terms of the premarital agreement without determining its validity and substantive fairness. Janet primarily argues that Gary, in violation of the fiduciary duties that he owed to her, failed to make adequate disclosures regarding his income before she signed the agreement.
 
 See, e.g.,
 
 Fick v. Fick, 109 Nev. 458, 464, 851 P.2d 445, 450-51 (1993) (recognizing that fiancés owe a fiduciary duty to each other which requires them to provide a full and fair disclosure of the nature and extent of their property and income prior to executing a premarital agreement).
 

 The legislature adopted the Uniform Premarital Agreement Act in 1989. The provisions of the act are applicable to any premarital agreement executed on or after October 1, 1989. 1989 Nev. Stat., ch. 472, § 22, at 1009. Since Janet and Gary executed their agreement in 1990, the provisions of the act, codified in NRS Chapter 123A, apply. NRS 123A.080 provides that:
 

 1. A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:
 

 
 *894
 
 (a) That party did not execute the agreement voluntarily;
 

 (b) The agreement was unconscionable when it was executed; or
 

 (c) Before execution of the agreement, that party:
 

 (1) Was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;
 

 (2) Did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and
 

 (3) Did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.
 

 NRS 123A.080 puts the burden of proving the invalidity of the agreement on the party challenging the agreement. Since Janet’s amended answer admitted the validity of the premarital agreement, we conclude that the district court was under no obligation to independently determine the validity and substantive fairness of the agreement.
 

 Whether the district court erred by awarding Gary attorney’s fees related to his opposition to Janet’s motion to amend her amended answer
 

 Janet challenges the district court’s award of attorney’s fees on the grounds that: (1) the district court lost jurisdiction to award such fees once Janet filed her notice of appeal; (2) Gary was not entitled to any attorney’s fees under the terms of the premarital agreement; and (3) the amount of attorney’s fees was unreasonable.
 

 Generally, “a timely notice of appeal divests the district court of jurisdiction to act and vests jurisdiction in this court.” Rust v. Clark Cty. School District, 103 Nev. 686, 688, 747 P.2d 1380, 1382 (1987). The district court ruled that the decree of divorce was an interlocutory order, and therefore, Janet should have sought NRCP 54(b) certification before appealing the decree of divorce.
 
 [3]
 
 We conclude that the district court erred by ruling that
 
 *895
 
 the decree of divorce was an interlocutory order which could not be appealed absent a certification pursuant to NRCP 54(b).
 
 See
 
 NRS 125.130(1) (providing that a “judgment or decree of divorce granted pursuant to the provisions of this chapter is a final decree”). However, where the issue is “entirely collateral to and independent from that part of the case taken up by appeal, and in no way affected the merits of the appeal[,]” this court has allowed district courts to grant relief while the case was on appeal. Bongiovi v. Bongiovi, 94 Nev. 321, 322, 579 P.2d 1246, 1247 (1978). We conclude that the issue of attorney’s fees was collateral to that part of the case which Janet appealed,
 
 i.e.,
 
 the denial of her motion for leave to amend her amended answer and the decree of divorce. Since this collateral matter did not affect the merits of Janet’s appeal, we conclude that the district court did have jurisdiction to rule on Gary’s motion for attorney’s fees.
 

 Janet next contends that Gary was not entitled to an award of attorney’s fees under the terms of the premarital agreement. As previously stated, Paragraph 10.2 contained a general provision prohibiting an award of attorney’s fees to either party. However, the agreement also contained a specific indemnity provision in Paragraph 12.5 which entitled a prevailing party to recover costs, including attorney’s fees, from the party challenging the validity of the agreement.
 

 Janet argues that Gary was not entitled to recover attorney’s fees under the indemnity provision because Janet never had the opportunity to litigate the validity of the agreement on the merits. We conclude that Janet’s argument lacks merit because the terms of the indemnity provision state that the prevailing party may recover attorney’s fees “as a result of or arising from any demand, claim or suit by or on behalf of either party hereto contesting
 
 or attempting to
 
 modify, change, set aside, nullify, or cancel this AGREEMENT or any part or provision of this AGREEMENT for any reason whatsoever.” (Emphasis added.) Janet’s motion to amend her amended complaint denying the validity of the agreement was an attempt to set aside and nullify the agreement. Therefore, the district court did not err by awarding Gary attorney’s fees related to his opposition to Janet’s motion for leave to amend.
 

 
 *896
 
 Finally, Janet contends that the district court’s award of $19,580.00 in attorney’s fees to oppose Janet’s motion to amend her amended answer was unreasonable. While we express our own surprise at the size of this award, we note that the district court was provided with a detailed breakdown of the work performed and the substantial hours billed for the work. The court found that the amount requested was reasonable under the circumstances. We conclude that the district court did not abuse its discretion by awarding such a large amount of attorney’s fees in this matter.
 
 See
 
 Nelson v. Peckham Plaza Partnerships, 110 Nev. 23, 26, 866 P.2d 1138, 1139-40 (1994) (recognizing that a district court’s award of fees and costs will not be disturbed upon appeal absent an abuse of discretion).
 

 For these reasons, we conclude that the district court did not err by awarding Gary attorney’s fees related to his opposition of Janet’s motion for leave to amend her amended answer.
 

 CONCLUSION
 

 In sum, we conclude that the district court did not abuse its discretion by denying Janet’s motion for leave to amend her amended answer. Since Janet admitted the validity of the premarital agreement in her answer, the district court did not err by applying the terms of the agreement. Although the district court erred by finding that the divorce decree was an interlocutory order, we conclude that the district court had jurisdiction to determine Gary’s motion for attorney’s fees because that issue was collateral to and independent from that part of the case taken up on appeal. We further conclude that Gary was entitled to recover attorney’s fees under the indemnity provision of the premarital agreement and that the amount of the award was not an abuse of discretion.
 

 [2]
 

 SCR 178 provides that:
 

 1. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
 

 (a) The testimony relates to an uncontested issue;
 

 (b) The testimony relates to the nature and value of legal services rendered in the case; or
 

 (c) Disqualification of the lawyer would work substantial hardship on the client.
 

 2. A lawyer may act as advocate in a trial in which another lawyer in the lawyer’s firm is likely to be called as a witness unless precluded from doing so by Rule 157 or Rule 159.
 

 [3]
 

 NRCP 54(b) provides that:
 

 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence
 
 *895
 
 of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.