LALAINE V. BLANCO, APPELLANT, *v.*
MARIO L. BLANCO, RESPONDENT.

No. 60153

October 31, 2013 311 P.3d 1170

*George R. Carter*, Las Vegas, for Appellant.

*Carol A. Menninger*, Las Vegas, for Respondent.

*Amber Robinson*, Las Vegas; *Kristine Brewer*, Las Vegas; *Silverman, Decaria & Kattelman, Chtd.*, and *Michael V. Kattelman*, Reno, for Amicus Curiae Family Law Section of the State Bar of Nevada.

Before the Court EN BANC.

## OPINION

By the Court, HARDESTY, J.:

In this divorce case, the wife was representing herself and failed to comply with several of the husband's discovery requests. As a consequence, the district court entered a default divorce decree against her as a sanction. We must decide the propriety of such case-concluding discovery sanctions in divorce proceedings, particularly in those cases involving child custody. We hold that it is not permissible to resolve child custody and child support claims by default as a sanction for discovery violations because the child's best interest is paramount and compels a decision on the merits.

As for the division of community property and debt, we conclude that the court must make an equal disposition as required by statute. Regarding all other claims, the court may enter a default, but only after a thorough evaluation and express findings of whether less severe sanctions are appropriate. Here, because the district court did not make any express findings as to appropriate-

ness of less severe sanctions before entering the default, we reverse the default divorce decree and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Mario and Lalaine Blanco were married in 1989, and they have four children. Lalaine filed a complaint for divorce, and Mario filed an answer and counterclaim. By their pleadings, the parties requested resolution of child custody and support, spousal support, property division, and attorney fees. Lalaine sought primary physical custody and $600 in monthly child support, while Mario requested joint physical custody and $2,552 in monthly child support. Lalaine's complaint requested that neither party pay spousal support, whereas Mario sought $1,000 in monthly spousal support for ten and one-half years. Both parties sought the division of the parties' community property, an award of attorney fees, and the permission to claim the children as exemptions on their respective income tax returns. Mario also asked that Lalaine maintain health insurance for the children and for him until he could obtain his own coverage.

Child custody was, for the most part, resolved through mediation. The parties entered into a stipulation and order for custody on June 3, 2011 (June custody order). Under that order, the parties agreed to joint legal custody of their two children, who were still minors at that time. As to physical custody, Mario was to have visitation at least three days each week, with those three days being spent in a row every other weekend from Friday afternoon until Monday. That order referred the parties back to mediation to resolve the holiday visitation schedule. Without any agreement as to the holiday visitation, it is questionable whether the June custody order resolved all custody issues with finality.

Aside from child custody, the remaining matters were not resolved with any finality before trial. The court ordered Lalaine to pay temporary child support to Mario of $1,127 per month. Lalaine, who worked as a nurse, historically earned significantly more income than Mario, but had reduced her work days from five to two days per week, claiming that she suffered an injury that made it difficult to work. Mario sought to prove that Lalaine was willfully underemployed, which was the subject of Mario's unanswered discovery requests that ultimately led to the sanctions. Spousal support, property division, and attorney fees also remained unresolved before trial.

### Discovery violations leading up to the default divorce decree

Shortly before trial was to commence, Lalaine's attorney withdrew from representation on the basis that Lalaine was uncooperative. Lalaine proceeded to represent herself. When Lalaine failed

to respond to Mario's discovery requests, Mario filed a motion to compel her responses to his second set of interrogatories and second request for production of documents, and for attorney fees. Mario sought discovery related to Lalaine's personal injury, her claim for lost wages, and her payments on the marital residence. Lalaine did not appear at the hearing before the discovery commissioner, and the commissioner recommended that Lalaine be ordered to comply with the discovery requests and pay $1,500 in attorney fees. No objection was filed and that recommendation became a court order.

Mario moved to continue the trial, and at a hearing on that motion, the district court addressed the issue of Lalaine's compliance with Mario's discovery requests. Although Lalaine was present at the hearing, she was often unresponsive and uncooperative, and the court's marshal had to verbally intervene on multiple occasions to produce a response to the judge's questions. Lalaine asserted that the discovery requests were given to her former attorney and that she had not seen them until a few days before the hearing. The district court continued the trial, allowed Lalaine two weeks to respond to Mario's discovery requests, and strongly suggested that Lalaine retain new counsel. Lalaine was specifically advised that if Mario did not receive the responses by the two-week deadline, then Mario's attorney was to submit an order to the court striking Lalaine's pleadings and granting the relief requested in Mario's counterclaim by default. The court also awarded attorney fees to Mario but deferred until trial a determination as to the amount.

At the following calendar call, Lalaine was present and explained to the court the extent of her compliance with discovery. The court determined that, while Lalaine had provided some information to Mario by the deadline, the responses were not full and complete. Concluding that discovery sanctions were warranted, the court ordered that Lalaine's pleading be stricken from the record and that a case-resolving default be entered that was consistent with prior orders and Mario's counterclaim.

The district court clerk proceeded to enter a default, and Mario requested a summary disposition. Without conducting any prove-up or evidentiary hearing, the district court entered the default divorce decree. Under that decree, the court awarded the parties joint legal and joint physical custody of the children in accord with the June custody order, but included a holiday visitation schedule virtually identical to the one set forth in Mario's counterclaim. The court ordered the temporary child support to stand and granted Mario's request that Lalaine provide health insurance for him and the children. Mario also received his requested $1,000 in monthly spousal support for ten and one-half years, as well as permission to claim both children as tax exemptions every year.

Turning to the division of the parties' community assets and liabilities, Lalaine was awarded the marital residence, which apparently had no equity, and the associated debt that was not specified or offset. Each party received a car and a one-half interest in Lalaine's retirement and bank accounts, although the values were not identified. Lalaine was ordered to assume the entire credit card debt, and to pay the $21,729.25 of attorney fees requested by Mario. Lalaine now appeals from the default divorce decree.

## DISCUSSION

On appeal, we must decide whether a default judgment as a discovery sanction in a divorce proceeding is appropriate. Lalaine contends that the case-concluding sanction was unduly harsh. She asserts that the district court should have considered a less severe sanction, or at least conducted a prove-up hearing to take evidence on matters such as spousal support and the monetary value of the parties' property, and provided findings of fact to support the decision. In response, Mario argues that some of the claims had already been resolved by agreement or otherwise, and to the extent that they had not, Lalaine's remedy was to file a motion to modify.

In Nevada, NRCP 37(b)(2)(C) provides the district court with authority to impose case-concluding sanctions for noncompliance with its orders. Under that rule, if a party fails to obey a court order, the court may strike pleadings, dismiss the action, or enter a default. *Id.* In addition to this rule-based authority, the court has the inherent equitable power to enter defaults and dismiss actions for abusive litigation practices. *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). While the district court enjoys broad discretion in imposing discovery sanctions, when the sanction imposed is dismissal with prejudice, a heightened standard of review applies. *Id.* Procedural due process considerations require that such case-concluding discovery sanctions be just and that they relate to the claims at issue in the violated discovery order. *Young*, 106 Nev. at 92, 787 P.2d at 779-80; *see also Foster v. Dingwall*, 126 Nev. 56, 65, 227 P.3d 1042, 1048 (2010).

Moreover, the sanction must "be supported by an express, careful and preferably written explanation of the court's analysis" of certain pertinent factors that guide the district court in determining appropriate sanctions. *Young*, 106 Nev. at 93, 787 P.2d at 780. These nonexhaustive factors may include the extent of the offending party's willfulness, whether the nonoffending party would be

prejudiced by the imposition of a lesser sanction, whether dismissal is too severe for the particular discovery abuse, the feasibility and fairness of less severe sanctions, the policy favoring adjudication of cases on their merits, and the need for deterring similar abusive conduct. *Id.* Dismissal or default should only be used in the most extreme cases. *See Nev. Power Co. v. Fluor Ill.*, 108 Nev. 638, 645, 837 P.2d 1354, 1359 (1992).

When the district court enters a default as a discovery sanction, the nonoffending party still has an obligation to present sufficient evidence to establish a prima facie case, and the court may conduct a prove-up hearing to determine, among other things, the amount of damages to be awarded for each claim. *Foster*, 126 Nev. at 66-67, 227 P.3d at 1049-50; *see also Hamlett v. Reynolds*, 114 Nev. 863, 867, 963 P.2d 457, 459 (1998). Although the typical divorce case does not involve a claim for damages, an evidentiary hearing may be necessary to take factual evidence and decide the issues in accordance with the relevant law.

Divorce proceedings encompass numerous issues including child custody, child support, spousal support, property division, and attorney fees, with each being governed by a different legal standard. Consequently, the appropriateness of a case-concluding sanction depends on the particular claim involved.

*Child custody and child support*

With regard to child custody and child support, we determine that a case-concluding discovery sanction is simply not permissible. These child custody matters must be decided on their merits. It is well established that when deciding child custody, the sole consideration of the court is the child's best interest. NRS 125.480; *Sims v. Sims*, 109 Nev. 1146, 1148, 865 P.2d 328, 330 (1993). Child support awards are guided by certain formulas as applied to the parties' income. *See* NRS 125B.070 (setting forth a child support formula as applied in primary physical custody cases); *Wright v. Osburn*, 114 Nev. 1367, 1368-69, 970 P.2d 1071, 1072 (1998) (calculating child support in joint physical custody cases based on the parties' gross incomes).

In other contexts, we have held that a court may not use a change of custody as a sword to punish parental misconduct, such as refusal to obey lawful court orders, because the child's best interest is paramount in such custody decisions. *See Sims*, 109 Nev. at 1149, 865 P.2d at 330; *see also Dagher v. Dagher*, 103 Nev. 26,

28, 731 P.2d 1329, 1330 (1987). Moreover, child custody decisions implicate due process rights because parents have a fundamental liberty interest in the care, custody, and control of their children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see also Price v. Dunn*, 106 Nev. 100, 105, 787 P.2d 785, 788 (1990) (stating that the policy in favor of deciding cases on their merits is heightened in domestic relations matters), *disagreed with on other grounds by NC-DSH, Inc. v. Garner*, 125 Nev. 647, 651 n.3, 218 P.3d 853, 857 n.3 (2009). Other courts have similarly held that before rendering a default judgment on child custody and support issues as a discovery sanction, the lower court must conduct an evidentiary hearing or consider other evidence in the record as to the child's best interest. *See Fenton v. Webb*, 705 N.W.2d 323, 327 (Iowa Ct. App. 2005); *Wright v. Wright*, 941 P.2d 646, 652 (Utah Ct. App. 1997).

Of course, the district court may still consider alternative sanctions, such as contempt, monetary sanctions, and attorney fees, to punish noncompliance with discovery or disobedience of court orders. *See Sims*, 109 Nev. at 1149, 865 P.2d at 330; *Dagher*, 103 Nev. at 28 n.3, 731 P.2d at 1330 n.3; *Rolley v. Sanford*, 727 A.2d 444, 448 (Md. Ct. Spec. App. 1999) (suggesting civil contempt as an alternative sanction to dismissal for a discovery violation in a child support matter). But given the statutory and constitutional directives that govern child custody and support determinations, resolution of these matters on a default basis without addressing the child's best interest and other relevant considerations is improper.

*Property division, spousal support, and attorney fees*

Aside from child custody and support, we determine that case-concluding discovery sanctions are permissible on other claims, but that any such sanction must comply with the procedural due process requirements of *Young* and *Foster*. The court must determine whether a case-concluding sanction is warranted or whether the imposition of a less-severe sanction would suffice. *Young*, 106 Nev. at 92-93, 787 P.2d at 779-80; *Foster*, 126 Nev. at 67, 227 P.3d at 1048-49. The sanction must relate to the claims at issue in the violated discovery order and must be supported by an explanation of the pertinent factors guiding such determination. *Young*, 106 Nev. at 92-93, 787 P.2d at 779-80; *Foster*, 126 Nev. at 67, 227 P.3d at 1048-49.

With property division in particular, however, we conclude that community property and debt must be divided in accordance with the law. NRS 125.150(1)(b) requires the court to make an equal

disposition of property upon divorce, unless the court finds a compelling reason for an unequal disposition and sets forth that reason in writing. The equal disposition of community property may not be dispensed with through default. Even jurisdictions that have permitted the entry of a default divorce decree as a discovery sanction require the district court to make independent findings on the division of property in accordance with the applicable law. In *Dethloff v. Dethloff*, 574 N.W.2d 867, 872 (N.D. 1998), the North Dakota Supreme Court held that a default judgment against the husband was an appropriate sanction in a divorce proceeding, however, the lower court could not simply accept the wife's proposed property division, but was required to make independent findings as to the value of the marital estate and give some explanation as to why the division was equitable under the law. Likewise, in *Draggoo v. Draggoo*, 566 N.W.2d 642, 648-49 (Mich. Ct. App. 1997), the Michigan Court of Appeals held that the husband could be denied participation in the adjudication of the property division as a sanction for his discovery abuses when the trial court nonetheless entered findings on the value of the marital property and made an equitable division in accordance with the law. We find these authorities persuasive.

Before making the factual determinations to support the disposition of property, it may be necessary for the court to hold an evidentiary hearing. At such a hearing, the district court has broad discretion to limit the offending party's presentation of evidence in line with the discovery violation. *See Foster*, 126 Nev. at 67-68, 227 P.3d at 1050; *see also Draggoo*, 566 N.W.2d at 648-49. Allowing evidence that the offending party refused to produce during discovery, for instance, has been recognized to be inequitable. *See Hamlett*, 114 Nev. at 867, 963 P.2d at 459.

Finally, as for spousal support and attorney fees, we conclude that no prove-up hearing is required and the court may render a decision without it.[1] The decision whether to grant spousal support and attorney fees is, by statute, purely discretionary with the district court. *See* NRS 125.150(1)(a), (3). NRCP 37(b)(2) limits an award of attorney fees to those incurred because of a discovery violation. *Nev. Power Co. v. Fluor Ill.*, 108 Nev. 638, 646-47, 837

---

[1]Our holding in *Rodriguez v. Rodriguez*, 116 Nev. 993, 998, 13 P.3d 415, 418 (2000), that marital misconduct may not be considered in awarding spousal support, does not compel a different result. *Rodriguez* involved misconduct within the parties' marital relationship and did not implicate the sanction power of the court.

P.2d 1354, 1360 (1992). Therefore, any additional attorney fees may be granted in accordance with the law governing awards of reasonable attorney fees in divorce cases. *See* NRS 125.150(3) (providing for an award of reasonable attorney fees in a divorce action); *Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (setting forth factors that govern the reasonable value of an attorney's services).

*Application of these principles to the facts of this case*

In the case before us, child custody was mostly resolved by agreement of the parties through the June custody order. We recognize the strong public policy favoring the resolution of child custody matters by agreement. *See Rennels v. Rennels*, 127 Nev. 564, 569, 257 P.3d 396, 399 (2011). Nevertheless, because Lalaine argues that the June custody order did not contain sufficient particularity as to Mario's visitation rights, that issue must be addressed by the district court. *See* NRS 125C.010(1). The district court must also make a determination as to child support in accordance with the law, as that claim should not have been resolved by default through the mere adoption of the temporary support order.

As for the remaining claims, the district court did not conduct any analysis under *Young* and *Foster* as to whether a default divorce decree was an appropriate sanction for Lalaine's discovery violation, including an analysis of the relevant factors and whether a less severe sanction was warranted. If, on remand, the district court determines that a case-concluding sanction is warranted, it may be necessary to hold an evidentiary hearing. Any resulting default divorce decree must comply with the standards set forth herein. Consequently, we reverse the default divorce decree and remand this matter to the district court for further proceedings consistent with this opinion.

PICKERING, C.J., and GIBBONS, PARRAGUIRRE, DOUGLAS, CHERRY, and SAITTA, JJ., concur.