134 Nev., Advance Opinion 31

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MEI-GSR HOLDINGS, LLC, A NEVADA LIMITED LIABILITY COMPANY, D/B/A GRAND SIERRA RESORT,<br>Appellant,<br>vs.<br>PEPPERMILL CASINOS, INC., A NEVADA CORPORATION, D/B/A PEPPERMILL CASINO,<br>Respondent. | No. 70319<br><br>FILED<br><br>MAY 03 2018 |

Appeal from a final judgment in a trade secrets action and post-judgment orders awarding attorney fees and costs and denying a post-judgment motion for a new trial. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Affirmed.*

Cohen Johnson Parker Edwards and H. Stan Johnson, Las Vegas; Law Offices of William E. Crockett and William E. Crockett, Encino, California, for Appellant.

Robison, Sharp, Sullivan & Brust and Kent R. Robison and Therese M. Shanks, Reno, for Respondent.

---

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, CHERRY, J.:

Under Nevada's Uniform Trade Secrets Act (NTSA), NRS 600A.030 defines a "[t]rade secret" as information that "[d]erives

---

[1]The Honorable Ron D. Parraguirre, Justice, did not participate in the decision of this matter.

independent economic value, actual or potential, from . . . not being readily ascertainable by proper means by the public or any other persons who can obtain commercial or economic value from its disclosure or use." In this appeal, we are asked to determine whether NRS 600A.030 precludes a defendant from demonstrating that certain information is readily ascertainable and not a trade secret even though the defendant acquired the information through improper means. We conclude that it does not, and thus, the district court did not err in instructing the jury concerning trade secrets under NRS 600A.030. We further conclude that appellant's other assignments of error lack merit. We therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

In July 2013, nonparty Ryan Tors, then employed by respondent Peppermill Casino, Inc. (Peppermill), went to the Grand Sierra Resort and Casino, owned by appellant MEI-GSR Holdings, LLC (GSR). There, GSR caught Tors using a slot machine key to access several GSR slot machines. GSR detained Tors and contacted the Nevada Gaming Control Board (NGCB), who thereafter investigated the matter and discovered that Tors accessed GSR's slot machines to obtain their "theoretical hold percentage information" (par values).[2] NGCB's investigation further revealed that, since 2011, Peppermill executives condoned Tors' conduct in obtaining par values from GSR and other casinos. However, NGCB found no evidence of Peppermill using par values from GSR or other casinos to adjust its own slot machines. Peppermill stipulated to a $1 million fine with the NGCB.

---

[2]A par value is a gaming industry term for the theoretical percentage of money retained by the casino for each slot machine played.

On August 2, 2013, GSR filed suit against Tors and Peppermill, asserting violation of the NTSA. The parties engaged in discovery and motion practice regarding Peppermill's production of emails sent and received by its executives that were obtained by the NGCB in its investigation of Peppermill. Thereafter, an 11-day jury trial was held, during which GSR proffered a jury instruction concerning the ascertainableness of information pursuant to NRS 600A.030's definition of a "trade secret." GSR's proposed jury instruction read as follows:

> To be readily ascertainable, the information asserted to be a trade secret must be ascertained quickly, or so self-revealing to be ascertainable at a glance.
>
> A trade secret is not readily ascertainable when the means of acquiring the information falls below the generally accepted standards of commercial morality and reasonable conduct, even if means of obtaining the information violated no government standard, did not breach any confidential relation, and did not involve any fraudulent or illegal conduct. Even if the information which is asserted to be a trade secret could have been duplicated by other proper means, the information is not readily ascertainable if in fact it was acquired by improper means.

The district court rejected GSR's proposed jury instruction and instructed the jury, over GSR's objection, that (1) "[i]f the information is in fact obtained through reverse engineering, however, the actor is not subject to liability, because the information has not been acquired improperly"; and (2) "[a] trade secret may not be readily ascertainable by proper means," and that "[p]roper means include . . . [d]iscovery by 'reverse engineering.'"

The jury returned a special verdict in favor of Peppermill and found that GSR's stolen par values did not constitute a "[t]rade secret"

Supreme Court
OF
Nevaoa

(O) 1947A

3

under NRS 600A.030 because GSR had failed to prove "by a preponderance of the evidence that its par information obtained by [Peppermill] was not readily ascertainable by proper means." Thereafter, Peppermill moved for costs and attorney fees due to GSR's rejection of Peppermill's offer of judgment and failure to obtain a more favorable judgment under NRCP 68. The district court awarded Peppermill its requested amount of $963,483 in attorney fees incurred since Peppermill's offer of judgment. The district court then entered an amended judgment on jury verdict in favor of Peppermill. GSR moved for a new trial, which the district court denied. This appeal followed.

## DISCUSSION

On appeal, GSR argues that the district court erred in instructing the jury concerning trade secrets under NRS 600A.030. We first address this issue, and hold that the district court did not abuse its discretion in rejecting GSR's proposed instruction, before turning to GSR's remaining arguments that the district court erred in (1) denying GSR's motion to amend complaint, (2) denying GSR's motions to compel Peppermill to produce all emails obtained by the NGCB in its investigation of the underlying matter, (3) denying GSR's motion for case-concluding sanctions, (4) excluding evidence of Peppermill stealing par values from other casinos, and (5) awarding Peppermill attorney fees under NRCP 68.

*Whether the district court erred in instructing the jury concerning trade secrets under NRS 600A.030*

GSR argues that the district court erred in failing to instruct the jury that NRS 600A.030 precludes a defendant from demonstrating that information is readily ascertainable and therefore not a trade secret when the defendant acquired the information by improper means, including

means that fall below accepted standards of commercial morality and reasonable conduct. We disagree.

This court "review[s] a decision to admit or refuse jury instructions for an abuse of discretion." *D & D Tire, Inc. v. Ouellette*, 131 Nev. 462, 470, 352 P.3d 32, 37 (2015). However, "whether a jury instruction accurately states Nevada law" is reviewed de novo. *Id.* "Although a party is entitled to jury instructions on every theory of its case that is supported by the evidence, the offering party must demonstrate that the proffered jury instruction is warranted by Nevada law." *Id.* at 470, 352 P.3d at 38 (internal quotation marks and citation omitted). This court further reviews questions of statutory interpretation de novo. *D.R. Horton, Inc. v. Eighth Judicial Dist. Court*, 125 Nev. 449, 456, 215 P.3d 697, 702 (2009). When interpreting a statute, if the statutory language is "facially clear," this court must give that language its plain meaning. *Id.*

NRS 600A.030(5) (2015) defines a "[t]rade secret" in relevant part as information that "[d]erives independent economic value, actual or potential, from not being generally known to, and *not being readily ascertainable by proper means by the public or any other persons* who can obtain commercial or economic value from its disclosure or use."[3] (Emphasis added.) We conclude that GSR's proposed jury instruction contravenes the plain language of NRS 600A.030. In particular, GSR fails to consider the phrase, "by the public or any other persons," which modifies the phrase "not being readily ascertainable by proper means." NRS

---

[3]The Legislature amended NRS 600A.030, effective October 1, 2017. 2017 Nev. Stat., ch. 592, § 9, at 4306-07. While the amendments do not affect our analysis in this matter, this opinion addresses the pre-amendment version of NRS 600A.030 that was in effect at the time of the events underlying this appeal. 1999 Nev. Stat., ch. 449, § 2, at 2101.

Supreme Court
OF
Nevada

(O) 1947A

5

600A.030(5)(a). When read together, these phrases unambiguously provide that the determination of whether information is "being readily ascertainable by proper means" extends to the conduct of "the public or any other persons" and is not limited to the defendant's conduct. Thus, although a defendant's acquisition of information by *proper means* is a relevant consideration in determining whether the information is a trade secret (i.e., demonstrates that the information is readily ascertainable), we hold that a defendant's acquisition of information by *improper means* does not preclude the defendant from demonstrating that the information is readily ascertainable by other persons. Accordingly, we conclude that GSR's proposed jury instruction is not supported by Nevada law, *see D & D Tire*, 131 Nev. at 470, 352 P.3d at 38, and thus, the district court did not abuse its discretion in rejecting the instructions.[4]

_____

[4]GSR also argues that the district court (1) erred in instructing the jury that reverse engineering is a proper means of ascertaining information, and (2) erred in failing to instruct the jury that information is readily ascertainable only if it is so self-revealing that it is ascertainable at a glance. We reject the first argument because, although NTSA does not define "proper means," the comments to the Uniform Trade Secrets Act (UTSA), which the NTSA was modeled after, define the term to include discovery by reverse engineering. Unif. Trade Secrets Act § 1 cmt. 2, 14 U.L.A. 538 (1985). Moreover, numerous witnesses at trial testified to being able to calculate the stolen par values through methods that may constitute reverse engineering. *See Allan v. Levy*, 109 Nev. 46, 49, 846 P.2d 274, 275-76 (1993) ("A litigant is entitled to have the jury instructed on all theories of his or her case which are supported by the evidence."). We further reject the second argument because the UTSA explicitly contemplated reverse engineering as a proper means of ascertaining information, and reverse engineering necessarily entails a process of ascertaining information beyond a glance.

 

*Whether the district court erred in denying GSR's motion to amend complaint*

Approximately a year and a half after bringing suit against Peppermill, GSR moved to amend its complaint. The then-discovery deadline and then-trial date were scheduled for April 16, 2015, and July 6, 2015, respectively. GSR sought to assert seven new claims and add Peppermill's general manager as a new defendant. GSR argued that the amendment was proper in light of newly discovered information following depositions with Tors. The district court denied GSR's motion to amend, finding that the motion was brought with undue delay because GSR's alleged newly discovered information was generally conceded in the parties' pleadings and was available from NGCB's investigation of Peppermill.

"After a responsive pleading is filed, a party may amend his or her pleading 'only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.'" *Kantor v. Kantor*, 116 Nev. 886, 891, 8 P.3d 825, 828 (2000) (quoting NRCP 15(a)). Nonetheless, "a motion for leave to amend pursuant to NRCP 15(a) is addressed to the sound discretion of the trial court, and its action in denying such a motion will not be held to be error in the absence of a showing of abuse of discretion." *Id.* (internal quotation marks omitted).

On appeal, GSR does not dispute the district court's finding of undue delay. Instead, GSR argues that delay alone is insufficient grounds to deny a motion to amend. However, this court has explicitly held that "[s]ufficient reasons to deny a motion to amend a pleading include undue delay, bad faith or dilatory motives on the part of the movant." *Kantor*, 116 Nev. at 891-93, 8 P.3d at 828-29 (affirming a district court's denial of appellant's motion to amend her complaint because granting the motion would require respondent to obtain new counsel, the motion to amend was

 

filed 11 months after the initial complaint and 7 weeks before the trial date, and the information supporting appellant's amended complaint was available to appellant when she filed her original complaint); *Burnett v. C.B.A. Sec. Serv., Inc.*, 107 Nev. 787, 789, 820 P.2d 750, 752 (1991) (affirming the district court's denial of appellant's motion to amend her complaint based on the untimeliness of the motion, which was filed 3 years after the original complaint and 6 years after the underlying accident occurred). Moreover, any prejudice alleged by GSR is severely undermined by its failure to renew its motion to amend when the district court ultimately extended the discovery deadline and continued the trial date by approximately 6 months. *See Stephens v. S. Nev. Music Co., Inc.*, 89 Nev. 104, 106, 507 P.2d 138, 139 (1973) (affirming the district court's denial of appellant's motion to amend complaint based, in part, on appellant's failure to renew her motion to amend even though trial was delayed by a year). Accordingly, we conclude that the district court did not abuse its discretion in denying GSR's motion to amend its complaint.

*Whether the district court erred in denying GSR's motions to compel Peppermill to produce all emails obtained by the NGCB in its investigation of the underlying matter*

During discovery, GSR sought all emails obtained by NGCB in its investigation of Peppermill. Peppermill untimely objected to production of the requested emails. GSR then moved to compel disclosure of the requested emails from Peppermill, arguing that Peppermill's untimely response effectively waived all objections to GSR's discovery request. The district court impliedly denied GSR's motion to compel by directing the parties to meet and confer to narrow GSR's production request. In an attempt to resolve the matter, the parties engaged in three discovery conferences, extensively negotiated the production of the requested emails,

and ultimately agreed to develop a word-search protocol to locate relevant emails for production. However, the parties failed to agree on common search terms.

Subsequently, Peppermill notified GSR that it had compiled the requested emails and transferred them onto a computer located at Peppermill's counsels' office for GSR's inspection. Peppermill further notified GSR that it would be able to use its proposed search terms to inspect the emails, but on the condition that Peppermill would review any emails selected by GSR for approval before producing them. GSR opposed Peppermill's proposed method of production, but nonetheless inspected the emails accordingly. Thereafter, GSR again moved to compel Peppermill to produce the requested emails, arguing that Peppermill's proposed method of inspection was improper. The district court again denied GSR's motion to compel, finding that Peppermill satisfied its burden of production in response to GSR's production request.

On appeal, GSR argues that the district court erred in denying its motions to compel because Peppermill's production of the requested emails for inspection did not comport with NRCP 34(b)(2)(E)(i), which provides that documents or electronically stored information must be produced "as they are kept in the usual course of business." In particular, GSR argues that it was entitled to a copy of the emails in their electronic format as a whole. We disagree.

"Generally, discovery matters are within the district court's sound discretion, and we will not disturb a district court's ruling regarding discovery unless the court has clearly abused its discretion." *Okada v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 83, 359 P.3d 1106, 1110 (2015) (internal quotation marks omitted).

 

In support of its argument, GSR relies on a United States District Court case, *McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Insurance Co.* (*McKinney*), which provides that "[p]roduction 'as kept in the [usual] course of business' generally requires turning over electronic documents in the format in which they are kept on the user's hard drive or other storage device." 322 F.R.D. 235, 250 (N.D. Tex. 2016). Under *McKinney*, GSR argues that Peppermill should have provided electronic copies of the requested emails to satisfy the requirement that the documents are produced as they are kept in the usual course of business. However, GSR's reliance is misplaced as the aforementioned language, when considered in context, provides that when a party decides to produce documents in their electronic format, the files should not be converted or altered to maintain that they are produced as kept in the usual course of business. *Id.* In fact, contrary to GSR's assertion, the *McKinney* court states: "[t]he most obvious means of complying with the [usual course of business requirement] is to permit the requesting party to inspect the documents where they are maintained, and the manner in which they are organized by the producing party." *Id.* at 249 (second alteration in original).

GSR nonetheless argues that Peppermill could have easily produced electronic copies of the emails and that inspecting the emails under Peppermill's method of production would have been unduly burdensome. We reject GSR's first argument because its request for production failed to specify a form for Peppermill to produce the emails. "If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." NRCP 34(b)(2)(E)(ii). In light of GSR's failure to specify a form, we conclude that



Peppermill produced the electronically stored information in a reasonably usable form. In particular, Peppermill retrieved the email files through an external hard drive, formatted the files to preserve the email directories and Outlook structure, and then transferred the files onto a computer to be made available for GSR's inspection for a 4-month period. We further reject GSR's second argument because its asserted difficulty in reviewing the emails was due, in part, to its broad discovery request. Thus, we conclude that the district court did not abuse its discretion in denying GSR's motions to compel Peppermill to produce electronic copies of the requested emails.[5]

*Whether the district court erred in denying GSR's motion for case-concluding sanctions under NRCP 37*

Below, GSR moved for case-concluding sanctions against Peppermill pursuant to NRCP 37 following Peppermill's failure to produce electronic copies of the requested emails. The district court issued an order denying GSR's motion, but did not provide any findings of fact or conclusions of law. On appeal, GSR argues that the district court abused its discretion in denying GSR's motion for case-concluding sanctions because (1) the district court's order failed to include findings of fact and conclusions of law, and (2) Peppermill willfully engaged in abusive discovery practices. We disagree.

A district court's decision to implement sanctions is reviewed for an abuse of discretion. *Young v. Johnny Ribeiro Bldg., Inc.*, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990). However, this court employs "a somewhat

---

[5]The remainder of GSR's arguments on appeal concerning the district court's denial of its motions to compel are premised on Peppermill's failure to produce the requested emails. Having concluded that Peppermill complied with GSR's discovery request and properly produced the emails, we need not reach these arguments.

 

heightened standard of review" for case-concluding sanctions. *Id.* Case-concluding sanctions "should be used only in extreme situations." *Nev. Power Co. v. Fluor Ill.*, 108 Nev. 638, 645, 837 P.2d 1354, 1359 (1992).

Here, the district court's order denying GSR's motion for case-concluding sanctions failed to proffer any findings of fact or legal analysis. Generally, these "sanction[s] must be supported by an express, careful and preferably written explanation of the court's analysis of certain pertinent factors that guide the district court in determining appropriate sanctions." *Blanco v. Blanco*, 129 Nev. 723, 729, 311 P.3d 1170, 1174 (2013) (internal quotation marks omitted). Specifically, this court in *Young* listed several nonexclusive factors for consideration in imposing case-concluding sanctions. 106 Nev. at 93, 787 P.2d at 780. However, a district court's failure to provide any findings of fact or legal analysis when denying a motion for case-concluding sanctions may nonetheless be reviewed for an abuse of discretion by examining the record. *See Schouweiler v. Yancey Co.*, 101 Nev. 827, 831, 712 P.2d 786, 789 (1985) (providing that, "[i]n the absence of express findings of fact and conclusions of law by the trial court, this court must rely on an examination of the record to see if the trial court's [denial of excess expert witness fees pursuant to NRS 18.005] constitutes an abuse of discretion").

Below, GSR relied solely upon NRCP 37 in seeking case-concluding sanctions. Thus, on appeal, we will only consider GSR's asserted abusive discovery practices by Peppermill as it relates to NRCP 37. *See Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) (providing that a point not urged below "is deemed to have been waived and will not be considered on appeal"). NRCP 37(b)-(c) permit the district court to impose case-concluding sanctions when a party fails to comply with a

 

discovery order or disclose certain information during discovery. Upon review of the record and consideration of the relevant *Young* factors, we are not persuaded that Peppermill's discovery practices constitute one of the "extreme situations" warranting case-concluding sanctions under NRCP 37. *Nev. Power Co.*, 108 Nev. at 645, 837 P.2d at 1359. Accordingly, we conclude that the district court did not abuse its discretion in denying GSR's motion for case-concluding sanctions.

*Whether the district court erred in excluding evidence of Peppermill obtaining par values from other casinos*

Below, Peppermill filed two motions in limine seeking to exclude evidence that it stole par values from other casinos. The district court granted the motions, and GSR moved to clarify the district court's order. Thereafter, the district court held a hearing on the matter and issued an oral ruling excluding the evidence, finding that the excluded evidence was largely irrelevant under NRS 48.025 (providing that "[e]vidence which is not relevant is not admissible"), and that any probative value would be substantially outweighed by considerations of waste of time under NRS 48.035 (providing that relevant "evidence may be excluded if its probative value is substantially outweighed by considerations of . . . waste of time"). On appeal, GSR argues that the district court erroneously excluded evidence of Peppermill obtaining par values from other casinos because this circumstantial evidence was highly probative of Peppermill's theft and use of GSR's par values. We disagree.

"The decision to admit or exclude relevant evidence, after balancing the prejudicial effect against the probative value, is within the sound discretion of the trial judge, and the trial court's determination will not be overturned absent manifest error or abuse of discretion." *Univ. &*

*Cmty. Coll. Sys. v. Sutton,* 120 Nev. 972, 985, 103 P.3d 8, 16-17 (2004) (internal quotation marks omitted).

We conclude that the district court correctly excluded the evidence under NRS 48.025 and NRS 48.035. First, Peppermill has admitted to improperly obtaining GSR's par values since the inception of the underlying suit; thus, any probative value in admitting such evidence to demonstrate Peppermill's theft of GSR's par values is "substantially outweighed by considerations of . . . waste of time." *See* NRS 48.035(2). Second, GSR fails to articulate how Peppermill's acts of accessing the slot machine information of other casinos is probative of Peppermill's use of GSR's par values to gain an economic advantage, even as circumstantial evidence. *See* NRS 48.015 (defining "relevant evidence"); NRS 48.025(2); *see also Frantz v. Johnson,* 116 Nev. 455, 467-69, 999 P.2d 351, 359-60 (2000) (providing that causation of damages may be inferred by certain circumstantial evidence in a claim for misappropriation of trade secrets). Thus, we conclude that the district court did not abuse its discretion in excluding evidence of Peppermill obtaining par values from other casinos.

*Whether the district court erred in awarding Peppermill attorney fees under NRCP 68*

GSR argues that the district court erroneously awarded Peppermill attorney fees under NRCP 68 because (1) NRS 600A.060 is the sole means of recovering attorney fees in a case concerning misappropriation of trade secrets; and (2) even if NRCP 68 is applicable, the district court failed to properly consider the enumerated factors in *Beattie v. Thomas,* 99 Nev. 579, 668 P.2d 268 (1983), and *Brunzell v. Golden Gate National Bank,* 85 Nev. 345, 455 P.2d 31 (1969). We disagree.




*Whether NRS 600A.060 supersedes NRCP 68*

"Although a district court's decision regarding an award of attorney fees is generally reviewed for an abuse of discretion, where, as here, the decision implicates a question of law, the appropriate standard of review is de novo." *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 82, 319 P.3d 606, 616 (2014). NRS 600A.060 provides that a "court may award reasonable attorney's fees to the prevailing party" when: (1) "[a] claim of misappropriation is made in bad faith," (2) "[a] motion to terminate an injunction is made or resisted in bad faith," or (3) "[w]illful and malicious misappropriation exists." NRCP 68(f)(2) provides, in relevant part, that "[i]f the offeree rejects an offer and fails to obtain a more favorable judgment, . . . the offeree shall pay the offeror's . . . reasonable attorney's fees, if any be allowed, actually incurred by the offeror from the time of the offer."

In *Frantz v. Johnson*, this court considered whether a district court abused its discretion in awarding attorney fees pursuant to NRS 600A.060, or alternatively, NRS 18.010.[6] 116 Nev. at 471, 999 P.2d at 361. Although this court did not expressly decide whether NRS 600A.060 supersedes other statutes permitting awards of attorney fees, this court implicitly recognized that NRS 600A.060 and NRS 18.010(2) were independently applicable by examining the record to determine the appropriate statutory basis for the district court's award. *Id.* at 471-72, 999

---

[6]NRS 18.010(2) provides that "[i]n addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party . . . [w]hen the prevailing party has not recovered more than $20,000; or . . . when the court finds that [a] claim . . . was brought or maintained without reasonable ground or to harass the prevailing party."

 

P.2d at 361-62. This court ultimately concluded that the record supported the district court's award of attorney fees under NRS 600A.060, but not NRS 18.010(2). *Id.* at 472, 999 P.2d at 362.

Consistent with *Frantz*, we conclude that NRS Chapter 600A does not preclude recovery of attorney fees under NRCP 68 in an action for misappropriation of trade secrets. Specifically, nowhere in NRS 600A.060 or NRS Chapter 600A does the Legislature expressly provide that NRS 600A.060 is the exclusive means of recovering attorney fees. *See State Indus. Ins. Sys. v. Wrenn*, 104 Nev. 536, 539, 762 P.2d 884, 886 (1988) (providing that this court has "repeatedly refused to imply provisions not expressly included in the legislative scheme"). Moreover, to the extent that the two can also be construed to conflict with each other, a harmonious interpretation is preferred. *See Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 993, 860 P.2d 720, 723 (1993) ("Whenever possible, this court will interpret a rule or statute in harmony with other rules and statutes."). Additionally, our interpretation furthers NRCP 68's purpose of "sav[ing] time and money for the court system, the parties, and the taxpayer by rewarding the party who makes a reasonable offer and punishing the party who refuses to accept such an offer." *Albios v. Horizon Cmtys. Inc.*, 122 Nev. 409, 419, 132 P.3d 1022, 1029 (2006). We can discern no logical reason to exclude NRCP 68's policy in actions arising under the NTSA. Accordingly, we conclude that NRS 600A.060 does not preclude a party from seeking other alternative grounds for recovering attorney fees.

*Whether the district court properly considered the Beattie and Brunzell factors*

Under NRCP 68, the district court must first consider the *Beattie* factors in determining whether to award attorney fees. *See Gunderson*, 130 Nev. at 81, 319 P.3d at 615. If the district court determines

Supreme Court
OF
Nevada

(0) 1947A

that attorney fees are warranted, it must then consider the *Brunzell* factors in determining whether the requested fee amount is reasonable and justified. *Id.* at 81, 319 P.3d at 615-16. "Although explicit findings with respect to these factors are preferred, the district court's failure to make explicit findings is not a per se abuse of discretion." *Wynn v. Smith*, 117 Nev. 6, 13, 16 P.3d 424, 428 (2001). "Instead, the district court need only demonstrate that it considered the required factors, and the award must be supported by substantial evidence." *Logan v. Abe*, 131 Nev. 260, 266, 350 P.3d 1139, 1143 (2015).

Here, the district court's order awarding attorney fees to Peppermill commented favorably on the quality of the work by the attorneys for both parties, recognized that the case involved complex issues regarding the NTSA, and provided that it has considered the necessary documents and enumerated factors under *Beattie* and *Brunzell*. The parties also extensively argued the factors below. Finally, Peppermill submitted documentation of its attorneys' invoices.[7] Accordingly, we conclude that the district court demonstrated that it considered the required factors. *See Logan*, 131 Nev. at 266-67, 350 P.3d at 1143; *Uniroyal Goodrich Tire Co. v. Mercer*, 111 Nev. 318, 324, 890 P.2d 785, 789 (1995), *superseded by statute on other grounds as stated in RTTC Commc'ns, LLC v. Saratoga Flier, Inc.*, 121 Nev. 34, 110 P.3d 24 (2005). Upon review of the record, we further

---

[7]GSR nonetheless argues that the district court erred in refusing to discount Peppermill's requested amount of attorney fees based on inadequate documentation under the *Brunzell* factors. We reject this argument as the district court's familiarity with the work quality of the parties' attorneys and the submitted invoices permitted the district court to properly consider the *Brunzell* factors. *See Logan*, 131 Nev. at 266-67, 350 P.3d at 1143.

conclude that the district court's award of attorney fees is supported by substantial evidence. *See Yamaha Motor Co. v. Arnoult*, 114 Nev. 233, 252 n.16, 995 P.2d 661, 673 n.16 (1998) (providing that "no one factor under *Beattie* is determinative"); *see also Schwartz v. Estate of Greenspun*, 110 Nev. 1042, 1049, 881 P.2d 638, 642 (1994) (providing that the district court "need not . . . make explicit findings as to all of the factors where support for an implicit ruling regarding one or more of the factors is clear on the record"). Thus, we conclude that the district court did not abuse its discretion in awarding attorney fees to Peppermill under NRCP 68.

## CONCLUSION

For the reasons set forth above, we affirm the district court's amended judgment on the jury verdict and the post-judgment orders awarding attorney fees and costs and denying a motion for a new trial.

_____, J.
Cherry

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Stiglich