NEVADA POWER COMPANY, a Nevada Corporation, CALIFORNIA DEPARTMENT OF WATER RESOURCES, an Agency of the State of California; DRAKE DeLANOY, H. ROGER McPIKE and PAUL ACKER, Appellants, v. FLUOR ILLINOIS, an Illinois Corporation and Successor in Interest to FLUOR POWER SERVICES, INC.; BOECON CORPORATION, a Washington Corporation; BE&C ENGINEERING, INC., a Delaware Corporation; LAS VEGAS BUILDING MATERIALS, a Nevada Corporation; NEVADA TESTING LABORATORIES, INC., a Nevada Corporation; WESTERN TECHNOLOGIES, INC., an Arizona Corporation; PITTSBURGH TESTING LABORATORY, a Pennsylvania Corporation; RON LEWIS CONSTRUCTION COMPANY, a Nevada Proprietorship; and CERAMIC COOLING TOWER COMPANY, Respondents.

No. 21524

August 20, 1992                    837 P.2d 1354

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Appellant Nevada Power Company and Appellant-Attorneys DeLanoy, McPike and Acker.

*Guild and Hagen,* Reno; *Pillsbury, Madison & Sutro* and *Edward Wayne LeBaron, Jr., Robert Westberg,* Sacramento, California, for Appellant California Department of Water Resources.

*Vargas & Bartlett* and *Thomas Kummer, Gerald Waite,* Las Vegas, for Respondent Western Technologies, Inc.

*Schreck, Jones, Bernhard, Woloson & Godfrey* and *L. T. Jones, Lance C. Earl,* Las Vegas; *Paul, Hastings, Janofsky & Walker* and *David B. Harriman, Jack Gould, Earl M. Benjamin,* Los Angeles, California, for Respondent Las Vegas Building Materials.

*Keefer, O'Reilly, Ferrario & Eskin* and *Mark E. Ferrario, Kevin E. Helm, Harry R. Gensler,* Las Vegas, for Respondent Fluor Illinois and Fluor Power Services, Inc.

*J. MacArthur Wright,* Mesquite; *Gallian & Westfall* and *Jeffrey Wilcox,* St. George, Utah, for Respondent Pittsburgh Testing Laboratory.

*Clark, Greene, Mainor & Associates* and *Wesley F. Yamashita,* Las Vegas, for Respondent Ron Lewis Construction.

*Jones, Jones, Close & Brown* and *Kirk R. Harrison,* Las Vegas; *Pettit & Martin* and *Robert B. Thum, Stephen J. Fowler,* San Francisco, California, for Respondent Boecon Corporation and BE&C Engineering, Inc.

*Thorndal, Backus, Maupin & Armstrong* and *Leland E. Backus, Nancy M. Somer,* Las Vegas, for Respondent Ceramic Cooling Tower Company.

## OPINION

*Per Curiam:*

This appeal arises from the entry of a district court order and judgment. The order dismissed with prejudice the civil action of appellants Nevada Power Company ("NPC") and California Department of Water Resources ("CDWR"), and awarded respondents their attorneys' fees and costs. In the subsequent judgment, the court ordered NPC and CDWR to pay the respondents more than 5.2 million dollars in attorneys' fees and costs. On appeal, NPC and CDWR contend that the district court erred in imposing NRCP 37(b) sanctions without first holding an evidentiary hearing. We agree.

### Factual Background

The underlying action in this case involved an allegedly defective concrete mechanical draft cooling tower at the Reid Gardner Generating Plant Unit # 4, located in Clark County, Nevada. The Reid Gardner plant generates electric power and is jointly owned by NPC and CDWR. When the Reid Gardner plant was constructed, the cooling tower was built as an integral part of the plant.[1] This cooling tower was constructed, tested, engineered, and designed by respondents.

According to NPC and CDWR, the concrete in the cooling tower began to deteriorate soon after the cooling tower was put into operation, and the tower had to be taken out of service after only five years of use. In 1986, NPC and CDWR sued the respondents for breach of contract, breach of implied and express warranties, negligence, affirmative misrepresentation, and strict products liability.[2] The parties then proceeded with discovery,

---

[1] A cooling tower cools the hot water discharged from boilers and is necessary for a plant like Reid Gardner to operate.

[2] Respondent Boecon joined Ceramic Cooling Tower Company as a third party defendant in March 1989.

which did not progress smoothly. Counsel for NPC and CDWR committed several discovery abuses for which monetary sanctions were imposed.

Believing that the concrete cooling tower was defective, NPC and CDWR constructed a wooden cooling tower to replace it. According to NPC, the concrete cooling tower had to be taken out of service so that a portion of the "existing water catchment basin" needed to operate the replacement tower could be connected to the replacement tower. In addition, part of the concrete tower had to be demolished because its size and location interfered with the necessary air flow to the replacement tower.

In early March 1988, counsel for NPC and CDWR informed respondents that the concrete cooling tower would be demolished on or about October 1, 1988. Respondents then filed motions for an order prohibiting the planned demolition. Subsequently, on September 29, 1988, the district court entered an order establishing an expedited schedule for discovery and providing that "[n]o portion of the cooling tower or cooling tower appurtenances shall be destroyed, demolished, dismantled, or altered in any way until such time as this court specifically grants approval of the same."

Then, on December 11, 1988, NPC filed a motion with the district court for partial demolition of the concrete cooling tower. At the same time, NPC sought a stipulation from all of the respondents. This stipulation, entered as an order on December 20, 1988, states, in relevant part:

> [NPC] shall, with any necessary leave of court, demolish the southerly four cells of the cooling tower which is the subject of this dispute any time after February 7, 1989, and [NPC] anticipate[s] demolition of the remaining three cells during an outage scheduled for the fall, 1989. [NPC] shall store the demolished material from the cells on the mesa adjacent to the Reid Gardner Unit No. 4 site. [Respondents] shall have free and immediate access to the stored material between the hours of 8:00 a.m. and 5:00 p.m., 7 days a week, upon 48 hours notice to [NPC], to conduct any investigation or tests they deem necessary.
>
> . . . .
>
> Moreover, it is understood by all parties that this Stipulation is entered into for the purposes of facilitating scheduling of further inspections by the [respondents], and to permit NEVADA POWER COMPANY to establish a schedule for all necessary work to demolish the existing cooling tower, and to place the new Reid Gardner Unit No. 4 cooling tower in operation.

NPC and CDWR demolished the first portion of the cooling tower in March 1989 and stored the demolished material on the

mesa as ordered by the district court. Thereafter, on November 19, 1989, NPC notified respondents that it intended to demolish the remainder of the tower sometime during the "Spring outage," which would begin on April 1, 1990, and end on May 19, 1990. On April 5, 1990, during a hearing on several discovery motions, the district court and respondents learned that NPC and CDWR were actually proceeding with the final demolition. The court then terminated the hearing. After the hearing was terminated, NPC and CDWR continued to demolish what remained of the cooling tower. The debris was then moved by truck to an adjacent site and buried under backfill.

On April 6, 1990, respondents filed a joint "ex parte application for order to show cause and motion to dismiss complaint pursuant to NRCP 37(b)(2) and EDCR 7.60." On the same day, the court issued an order to show cause. In a subsequent brief, respondents contended that the appellant's misconduct, including the destruction of the tower and various discovery abuses, justified a finding of contempt and sanctions. Specifically, respondents sought dismissal of the complaint and an award of attorneys' fees and costs. In support, respondents attached affidavits describing additional tests and analyses they would have performed if the remaining portion of the tower had not been demolished and buried.

On April 16, 1990, NPC and CDWR submitted a response to the order to show cause and an opposition to the motion to dismiss. In these papers and exhibits, NPC and CDWR disclaimed any intention to disobey willfully the court's orders, proposed alternate sanctions to dismissal, and requested that the court hold an evidentiary hearing on willfulness and prejudice.

On May 3, 1990, the court held a hearing on contempt and the motion to dismiss. Respondents introduced a videotape showing the tower's demolition and argued that the case should be dismissed. Respondents also relied on their experts' affidavits to demonstrate "irreparable prejudice" resulting from the tower's destruction. Counsel for NPC and CDWR argued that they had interpreted the December 20, 1988, order in good faith as allowing the demolition and that the respondents had already sufficiently inspected and tested the demolished tower.

On June 15, 1990, the court entered findings of fact and conclusions of law, including the following:

> (1) Its September 27, 1988 order had not been vacated or modified by the December 20, 1988 order, which gave NPC permission to demolish only four cells, and the order had been willfully violated;
> (2) The tower's destruction and the burial of its remains caused irreparable prejudice to respondents;

(3) Dismissal with prejudice was "the only means to cure the irreparable prejudice";

(4) NPC and CDWR are bound by the actions of their attorneys and were "cognizant of all the events, including Court orders, involving the demolition of the cooling tower";

(5) "The facts in dispute [were] sufficiently addressed by way of affidavits, documents, pleadings and argument of counsel. Therefore, an evidentiary hearing would be cumulative and unnecessary."

On the same day, the court entered a written order in which it found NPC, CDWR and appellant-attorneys in contempt, dismissed the action, and imposed attorneys' fees and costs on NPC and CDWR "pursuant to NRCP 37(b)(2) and EDCR 7.60." In a subsequent judgment, the court ordered NPC and CDWR to pay respondents more than $5.2 million in attorneys' fees and costs.[3]

### The Sanction of Dismissal

Although the district court found NPC, CDWR, and the appellant-attorneys in contempt, the court relied on NRCP 37(b)(2)[4] in imposing the sanction of dismissal.[5] Therefore, we must determine whether the district court erred in dismissing the

---

[3]According to this judgment, NPC and CDWR are jointly and severally liable for the attorneys' fees and costs.

[4]The court also stated that it was dismissing the complaint with prejudice under EDCR 7.60. We note, however, that under NRCP 83, district court rules must be consistent with the Nevada Rules of Civil Procedure. Therefore, EDCR 7.60 cannot exceed the scope of NRCP 37(b).

[5]During oral argument, Mark Ferrario, counsel for respondent Fluor Illinois, admitted that the sanctions were not imposed pursuant to the court's contempt power. Specifically, he stated that:

> the sanction was imposed under Rule 37 in conjunction with our motion to dismiss and it was also imposed as abuse of litigation practices. . . . The dismissal did not come as a result of a civil or criminal contempt. That is abundantly clear when you review the detailed findings of fact and conclusions of law that were submitted by the trial court. The court did find them in contempt but when it came time to levy the ultimate sanction, what the court said was, "These parties were in violation of Rule 37 and they also engaged in a pattern of abusive litigation practices."

In addition, respondents asserted in their joint answering brief that the court relied on NRCP 37(b)(2) in dismissing the suit. Further, as noted above, respondents filed a joint motion to dismiss complaint pursuant to NRCP 37(b)(2) and EDCR 7.60. We thus find it unnecessary to determine whether the district court had authority, under its contempt power, to dismiss the complaint.

suit with prejudice pursuant to NRCP 37(b)(2).[6] We have held that "[w]here the discovery sanctions are within the power of the district court, this court will not reverse the particular sanctions imposed absent a showing of abuse of discretion." Young v. Johnny Ribeiro Bldg., Inc., 106 Nev. 88, 92, 787 P.2d 777, 779 (1990) (citation omitted). Where the sanction of dismissal with prejudice has been imposed, "a somewhat heightened standard of review should apply." Id. The appellants assert that the district court abused its discretion in dismissing their suit without holding an evidentiary hearing, and we agree.

Under NRCP 37(b)(2), a party's suit may be dismissed if the party "fails to obey an order to provide or permit discovery."[7] Determining whether a party "fail[ed] to obey an order" may, as it does here, involve factual questions as to the meaning of the order allegedly disobeyed and questions as to whether the disobedient party did, in fact, violate the court's discovery order. The only way that these questions of fact can be properly decided is by holding an evidentiary hearing.

In the present case, NPC and CDWR raised questions of fact regarding the meaning of the court's discovery orders and denied that they had disobeyed the orders. Specifically, they contended that their counsel, in good faith, interpreted the court's December order as modifying its September order to mean that the tower could be destroyed any time after February 7, 1989. In addition,

---

[6]NRCP 37(b)(2) states the following:

> (2) Sanctions-Party. If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> . . . .
>
> (C) An order . . . dismissing the action or proceeding or any part thereof . . . .;
>
> . . . .
>
> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

[7]As we have recognized in previous cases, NRCP 37 sanctions may also be imposed in situations where the complaining party has destroyed evidence relating to the lawsuit before filing the suit. See, e.g., Stubli v. Big D Int'l Trucks, Inc., 107 Nev. 309, 810 P.2d 785 (1991); Fire Ins. Exchange v. Zenith Radio Corp., 103 Nev. 648, 747 P.2d 911 (1987). These cases are based on the premise that litigants should not be able to circumvent the district court's power to enforce discovery rules by destroying physical evidence prior to a request for production.

NPC and CDWR asserted that it was necessary for them to demolish the rest of the cooling tower during an outage; otherwise, the demolition could cost them $200,000.00 per day for replacement energy. Finally, they noted that they had announced to respondents several months ahead of time that they planned to destroy the remaining portion of the cooling tower. We thus conclude that the district court abused its discretion in failing to hold an evidentiary hearing on factual issues relating to the meaning of the discovery orders and relating to whether these orders had actually been disobeyed.

Dismissal for failure to obey a discovery order should be used only in extreme situations; if less drastic sanctions are available, they should be utilized. Moore v. Cherry, 90 Nev. 390, 528 P.2d 1018 (1974). If a district court determines that a facially clear discovery order was disobeyed, the court must then give "thoughtful consideration" to all of the pertinent factors affecting its discretionary decision to impose the sanction of dismissal. *Johnny Ribeiro,* 106 Nev. at 92, 787 P.2d at 780. These factors include the following:

> the degree of willfulness of the offending party, the extent to which the non-offending party would be prejudiced by a lesser sanction, the severity of the sanction of dismissal relative to the severity of the discovery abuse, whether any evidence has been irreparably lost, the feasibility and fairness of alternative, less severe sanctions, the policy favoring adjudication on the merits, whether sanctions unfairly operate to penalize a party for the misconduct of his or her attorney, and the need to deter both the parties and future litigants from similar discovery abuses.

*Id.* at 93, 787 P.2d at 780. If the party against whom dismissal may be imposed raises a question of fact as to any of these factors, the court must allow the parties to address the relevant factors in an evidentiary hearing.

In the present case, the court determined that its December order did not replace its September order, that the tower's destruction had caused "irreparable prejudice" which could not be remedied by any sanction short of dismissal, and that NPC and CDWR had personally participated in the demolition and were therefore blameworthy. The court also determined that other remedies were not viable because appellants had demolished the subject matter of the suit and had thus "effectively destroyed defendants' . . . ability to properly prepare their defense." The district court improperly held that no evidentiary hearing was necessary to resolve the foregoing determinations. Appellants

had no opportunity to present witnesses or to cross-examine respondents or their experts with regard to any of the above matters. This case was litigated for more than three years before the cooling tower was completely destroyed. Discovery relating to the condition of the tower was undertaken by respondents, and respondents inspected the cooling tower at various times before its destruction. In addition, appellants raised a number of questions of fact regarding the *Johnny Ribeiro* factors.

We conclude that the district court abused its discretion in failing to hold an evidentiary hearing at which appellants could introduce evidence and cross-examine respondents' experts concerning the meaning of the discovery orders, concerning the issue of whether appellants disobeyed the discovery orders and concerning the *Johnny Ribeiro* factors discussed above.

### *The Sanction of Attorneys' Fees and Costs*

Appellants also contend that the district court abused its discretion in awarding respondents *all* of their attorneys' fees and costs from the inception of the suit, more than $5.2 million. We agree.

The district court awarded these fees and costs pursuant to NRCP 37(b)(2).[8] NRCP 37(b)(2) provides that "the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, *caused by the failure.*" (Emphasis added.) As discussed above, when a party facing NRCP 37(b)(2) sanctions raises a question of fact with regard to the meaning of a discovery order, the court must hold an evidentiary hearing to determine what the discovery order means and whether it has been violated. In addition, federal cases interpreting sanctions under FRCP 37(b)(2) have held that fees and costs imposed as a sanction must specifically relate to the particular claim at issue in the order. *See, e.g.,* Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1385-86 (9th Cir. 1988) (holding that to the extent that an award of fees includes fees not incurred pursuant to the disobedience of a court order, it is an abuse of discretion); United States v. National Medical Enterprises, Inc., 792 F.2d 906, 910 (9th Cir. 1986) (holding that sanction must be just and must "specifically relate to the particular claim at issue in the order"). We agree with these cases and conclude that NRCP 37(b)(2) limits an

---

[8]As mentioned above, according to the court's written order, the attorneys' fees and costs were imposed as a sanction pursuant to NRCP 37(b)(2) and EDCR 7.60. Although the court listed EDCR 7.60 as a basis for the sanctions, the requirements for the imposition of sanctions under this rule are at least as stringent as the requirements under NRCP 37(b). *See* NRCP 83.

award of attorneys' fees to those incurred because of the alleged failure to obey the particular order in question.

In the present case, sanctions, in the form of *all* of respondents' attorneys' fees and costs from the inception of the suit, were imposed on NPC and CDWR because they demolished the remaining portion of the cooling tower, allegedly in violation of the court's September order. The court never held an evidentiary hearing to determine the meaning of its September order in light of its stipulated December order; and, instead of determining what fees and costs were actually caused by the destruction of the remaining portion of the cooling tower, the court summarily ordered NPC and CDWR to pay the entire amount of the attorneys' fees and costs incurred by respondents. It is difficult for us to understand how the appellants' alleged violation "caused" *all* of these fees and costs. We thus conclude that the district court abused its discretion in awarding *all* attorneys' fees and costs; instead, under NRCP 37(b)(2), a district court should, if it properly finds that a party has violated a discovery order, determine only those fees and costs associated with the violation of the discovery order.[9]

For the reasons given above, we reverse the order and judgment of the district court and remand this case to the Eighth Judicial District Court for an evidentiary hearing consistent with this opinion.

---

[9]Respondents claim that the award of all attorneys' fees and costs from the inception of the suit can be justified by the court's inherent power to sanction bad faith litigation. In the present case, the district court relied on NRCP 37(b)(2) in imposing the sanctions of attorney's fees and costs. Thus, as the district court relied on sanctioning mechanisms other than its inherent power, we conclude that it is unnecessary to determine whether the court could impose such a sanction under its inherent power.

NPC and CDWR assert that the district court erred in imposing such a large sanction on them for the acts of their attorneys. We disagree with this assertion; for in "our system of representative litigation, . . . each party is deemed bound by the acts of his lawyer-agent," Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962), and a party cannot "avoid the consequences of the acts or omissions of this freely selected agent." Moore v. Cherry, 90 Nev. 390, 395, 528 P.2d 1018, 1072 (1974).