**132 Nev., Advance Opinion 66**

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

ELIEZER MIZRACHI,
Appellant,
vs.
DIANE MIZRACHI,
Respondent.

No. 66176

**FILED**

SEP 15 2016



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a motion to clarify the holiday parenting time provisions in the parties' divorce decree. Eighth Judicial District Court, Family Court Division, Clark County; Gerald W. Hardcastle, Senior Judge.[1]

*Reversed and remanded.*

Jacobson Law Office, Ltd., and Rachel M. Jacobson, Las Vegas, for Appellant.

Diane Mizrachi, North Las Vegas, in Pro Se.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

---

[1]Although Judge Hardcastle signed the order, the Honorable Jack B. Ames, Senior Judge, decided the motion at issue while sitting in Department C.

16-901067

*OPINION*

By the Court, GIBBONS, C.J.:

In family law cases, parents are encouraged to work together to reach agreements to allow them to maintain control over how they will exercise custody of their children. *See Bluestein v. Bluestein*, 131 Nev. ___, ___, 345 P.3d 1044, 1047 (2015) ("Public policy encourages parents to enter into private custody agreements for co-parenting."). And when they do, the resulting agreements are generally enforceable, as long as "they are not unconscionable, illegal, or in violation of public policy." *Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 227 (2009). But even when parents come to an agreement, disputes may later arise as to what the parties meant by a term in the agreement, or whether the agreement is working as the parties intended. Thus, when the agreement is incorporated into a judgment, order, or decree, there are mechanisms in place for parents to return to court to resolve such disputes.

In this appeal, we discuss one such dispute and the proper method for resolving that dispute. In particular, we consider whether a motion filed in the district court was a motion to modify an agreement-based decree, or rather, was a motion to clarify, interpret, or construe the decree. And we conclude that, in the underlying action, the district court clarified, rather than modified, the parties' divorce decree, as that court defined the rights assigned to the parties by the decree. While it was proper for the court to clarify the decree, our review of the record demonstrates that the district court did not apply the proper procedure in doing so, as the court failed to take evidence or otherwise consider the intent of the parties in reaching the agreement that led to the decree.




Thus, we reverse the district court's decision and remand this matter to the district court for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Based on the parties' unwritten, out-of-court stipulation, the district court entered a divorce decree drafted by respondent Diane Mizrachi's attorney.[2] As relevant to this appeal, the decree grants the parties joint legal and physical custody and provides that appellant Eliezer Mizrachi (Eli) "will have the minor child for the Jewish holidays every year," and Diane "will have the minor child on the Christian holidays every year." The decree does not identify specific days or times or otherwise define what is meant by "the Jewish holidays" or "the Christian holidays."

Less than ten months after the court entered the divorce decree, Diane filed a motion to clarify the decree as to the holiday parenting time schedule, asserting that disputes had arisen between the parties with regard to Eli's holiday parenting time.[3] In particular, Diane asserted that Eli was requesting parenting time with the child for the full period of 12 Jewish holidays,[4] whereas she believed the divorce decree only

---

[2]EDCR 5.09(2) states "all contested divorces which are settled by the parties with all issues resolved . . . may be submitted without hearing by agreement of the parties and with the approval of the court."

[3]Diane's motion and Eli's subsequent countermotion contained additional requests for relief beyond what is discussed in this opinion. Because the district court's resolution of these additional requests is not challenged on appeal, the requests are not discussed further herein.

[4]Specifically, Eli asserted that he was entitled to parenting time on Rosh Hashanah, Yom Kippur, Sukkot, Shemini Atzeret, Simchat Torah, Hanukkah, Tu B'Shevat, Purim, Passover, Lag B'Omer, Shavuot, and

*continued on next page...*

allowed him to have holiday parenting time on the first day of Hanukkah, Passover, Rosh Hashanah, and Yom Kippur. In support of her position, Diane alleged that, during their 13-year marriage, Eli rarely observed any of the Jewish holidays. She also noted that, if the provision was interpreted as Eli suggested, there would be potential conflicts with her parenting time on the Christian holidays, as the days of the Jewish and Christian holidays sometimes overlap.

In the motion, Diane asserted that each department of the Family Division of the Eighth Judicial District Court used a default schedule, which identified only Hanukkah, Passover, Rosh Hashanah, and Yom Kippur as the relevant Jewish holidays for setting a custody schedule. And she argued that the parties' divorce decree should be interpreted consistently with the default schedule.[5] Eli opposed the motion, contending that the decree's reference to "the Jewish holidays" included all 12 of the holidays that he sought, which extended for the full holiday time frame. Moreover, Eli contended that Diane had agreed to give him these holidays in exchange for him giving up certain other rights

---

*...continued*

Tisha B'Av. In a post-decree letter that was attached to Diane's motion, Eli indicated that he was willing to compromise to some extent on these holidays. To that end, he stated that he wanted the full time period for Yom Kippur (one day), Hanukkah (eight days), and Passover (eight days) and at least the first night of four of the other holidays.

[5]Although the underlying case was assigned to Department C, Diane attached the default schedule for Department D as an exhibit to her motion. At a later hearing, her attorney represented that he spoke to Department C's law clerk, who had informed him that Department C used Department D's default schedule.

in the divorce decree. Diane filed a reply, asserting that Eli gave up the other rights for reasons unrelated to his holiday parenting time.

The district court subsequently held a hearing on the motion, but did not hear testimony or take other evidence. Instead, the district court, relying solely on the parties' verified pleadings, arguments of counsel, and its own independent Internet research, found that "there [was not] a clear understanding between the two parties at the time [of the agreement] and there needs to be a clarification on the Jewish holidays." To that end, the court granted Diane's request to clarify the meaning of the term "the Jewish holidays" as used in the divorce decree. In so doing, the court adopted Department D's religious holiday default schedule, concluding that Eli would have holiday parenting time only on the first day of Hanukkah, Passover, Rosh Hashanah, and Yom Kippur. This appeal followed.

## ANALYSIS

Parties in family law matters are free to contract regarding child custody and such agreements are generally "enforceable if they are not unconscionable, illegal, or in violation of public policy." *Rivero*, 125 Nev. at 429, 216 P.3d at 227. Indeed, even beyond the idea that parents are free to enter into such agreements, the Nevada Supreme Court has gone further and explained that public policy favors parenting agreements.[6] *See Bluestein*, 131 Nev. at ___, 345 P.3d at 1047; *see also St.*

---

[6]The Nevada Revised Statutes and local court rules for several of the judicial districts in Nevada also contemplate such agreements, further demonstrating their desirability. *See* NRS 125C.0653(1) ("The parents may modify an agreement regarding custodial responsibility . . . by mutual consent."); *see also* NRS 123.080(1) (providing that parents can
*continued on next page...*

*Mary v. Damon*, 129 Nev. ___, ___, 309 P.3d 1027, 1035-36 (2013) (recognizing a presumption "that fit parents act in the best interest of their children" and that public policy favors those parents entering into custody agreements). Thus, parents are encouraged to reach such agreements, and the court "will generally recognize the preclusive effect of such agreements if they are deemed final." *See Rennels v. Rennels*, 127 Nev. 564, 569, 257 P.3d 396, 399 (2011). Moreover, when parties enter into a parenting agreement, the terms of that agreement will control unless and until a party moves to modify those terms.[7] *Rivero*, 125 Nev. at 429, 216 P.3d at 226; *see also Harrison v. Harrison*, 132 Nev. ___, ___, 376 P.3d 173, ___ (2016) (explaining that the appellate court will not rewrite a contract to include terms not agreed to by the parties).

While we reiterate that parenting agreements are valuable and enforceable, *see Rivero*, 125 Nev. at 429, 216 P.3d at 227, we also recognize that, despite the parties' best efforts in reaching such agreements, disputes will sometimes arise once the parties begin putting their agreed-upon terms into practice. Such is the situation here, where

---

*...continued*

contract with each other "for the support . . . of their children" during a legal separation); NRS 123.080(4) (providing for ratification and adoption of contracts between spouses into decrees of divorce); NRS 125C.005(1) ("The court may . . . require the parents to submit to the court a plan for carrying out the court's order concerning custody."); *see also* FJDCR 25(1)(A); WDFCR 53(1)(a); 4JDCR 5(4); EDCR 5.70(a); NJDCR 26(a)(1).

[7]When a motion to modify is filed, "the court must use the terms and definitions provided under Nevada law" to resolve the motion, and at that time, "the parties' definitions no longer control." *Rivero*, 125 Nev. at 429, 216 P.3d at 227.

the parties discovered, after having agreed that Eli would have parenting time on the Jewish holidays, that they disagreed as to what that term actually meant.

That disagreement has led to this appeal, in which Eli argues that the district court erred by finding the holiday provision to be ambiguous when the term could only be reasonably interpreted to mean the 12 Jewish holidays for their full time span. He also contends that, to the extent there was any ambiguity, the district court improperly failed to consider the intent of the parties and to construe such ambiguity against Diane, whose attorney drafted the decree. Finally, although Eli asserts that the motion was presented and decided only as a motion for clarification, he also argues that, by interpreting the term in the manner that it did, the district court essentially modified the divorce decree without considering whether the modification was in the child's best interest.[8] Diane agrees that the term was unambiguous, but argues that

---

[8]Eli also asserts that the district court failed to consider whether there had been a change in circumstances. A change in circumstances must be shown when modifying a primary physical custody arrangement, but is not necessary to support a modification of a joint physical custody arrangement. *See Rivero*, 125 Nev. at 430, 216 P.3d at 227 (explaining that a joint physical custody arrangement may be modified whenever modification "is in the child's best interest," but that a primary physical custody arrangement may only be modified "when there is a substantial change in the circumstances affecting the child and the modification serves the child's best interest"). Because the parties in this case share joint physical custody, even if the court did modify the custody arrangement as Eli contends, no change in circumstances was necessary to support that modification; the court would have needed to find only that the modification was in the child's best interest. *See id.*

the district court properly clarified the meaning of the term to include only the first day of the four specified holidays.

As a preliminary matter, Eli's argument regarding effective modification raises the question of whether the district court actually modified or only clarified the holiday parenting time provision in the divorce decree. Thus, we begin our analysis by briefly addressing that question before turning to the merits of the court's conclusion as to the meaning of the term, "the Jewish holidays."

*Clarification versus modification*

The Nevada Supreme Court has long distinguished between an order modifying a judgment or decree and an order construing or clarifying a judgment or decree. *See Murphy v. Murphy*, 64 Nev. 440, 445, 183 P.2d 632, 634 (1947) (concluding that the district court's order defining the effect of a divorce decree but not changing that decree construed, rather than modified, the decree). This distinction is important in many cases because modification of a judgment may not be permitted, absent special circumstances, once the judgment has become final and the time for seeking relief from the judgment has passed. *See* NRCP 60(b) (generally limiting the time for filing certain motions for relief from a judgment to six months); *Kramer v. Kramer*, 96 Nev. 759, 762-63, 616 P.2d 395, 397-98 (1980) (concluding that a district court lacked jurisdiction to modify a divorce decree's property distribution provisions more than six months after the decree was entered).

Of course, custody cases are somewhat different because, on a proper showing, a custody decision may be modified at any time. *See* NRS 125C.0045(1)(b) (providing that the court may modify its custody order at any time). Nevertheless, the distinction between modification and clarification is still important in custody cases because certain specific

COURT OF APPEALS
OF
NEVADA

(O) 1947B

standards must be met in order for a court to properly modify a custody order. *See, e.g., Rivero*, 125 Nev. at 430, 216 P.3d at 227 (explaining that, to modify a joint physical custody arrangement, the court must find that modification "is in the child's best interest[,]" and to modify a primary physical custody arrangement, the court must find "a substantial change in the circumstances affecting the child and [that] modification serves the child's best interest"); *see also Bluestein*, 131 Nev. at ___, 345 P.3d at 1048-49 (discussing modification of an agreement providing for joint physical custody); *Ellis v. Carucci*, 123 Nev. 145, 149-53, 161 P.3d 239, 242-44 (2007) (discussing modification of primary physical custody arrangements).

This distinction is also important because, on the clarification side, the district court only "has inherent power to construe its judgments and decrees for the purpose of removing any ambiguity." *Kishner v. Kishner*, 93 Nev. 220, 225-26, 562 P.2d 493, 496 (1977) (vacating an order clarifying a judgment and decree because the judgment and decree was not ambiguous, and thus, no clarification was warranted). Thus, we must determine whether the court modified or clarified the decree in order to consider whether the proper standards were applied.

To that end, the Nevada Supreme Court has held that a modification "alters the parties' substantive rights, while a clarification involves the district court defining the rights that have already been awarded to the parties" and leaves their substantive rights unchanged. *Vaile v. Porsboll*, 128 Nev. 27, 33, 268 P.3d 1272, 1276 (2012). Here, the divorce decree assigned Eli the substantive right to exercise parenting time on the Jewish holidays, and the district court did not purport to alter that right in any way. Instead, the court merely sought to define which

days were included within the meaning of the provision. Thus, we conclude that the court was only clarifying the term, which it had authority to do, so long as the term was ambiguous. *See Kishner,* 93 Nev. at 225, 562 P.2d at 496.

*Ambiguity*

Our supreme court has held that a provision "is ambiguous if it is capable of more than one reasonable interpretation." *See In re Candelaria,* 126 Nev. 408, 411, 245 P.3d 518, 520 (2010) (discussing ambiguity of statutory language); *see also Galardi v. Naples Polaris, LLC,* 129 Nev. 306, 309, 301 P.3d 364, 366 (2013) (providing that "[a] contract is ambiguous if its terms may reasonably be interpreted in more than one way"). In this case, both parties assert that the term, "the Jewish holidays," was unambiguous, but they each ascribe a different meaning to that term. It follows that, if both meanings put forth by the parties are reasonable, then the term would necessarily be ambiguous. *See Candelaria,* 126 Nev. at 411, 245 P.3d at 520; *see also Galardi,* 129 Nev. at 309, 301 P.3d at 366.

Eli asserts that "the Jewish holidays" means the full span of 12 specified holidays. As there were no restrictions placed on the term, "the Jewish holidays," in the divorce decree, it is at least arguably reasonable to interpret the term as including the full length of all of the Jewish holidays sought by Eli. *See* Jessica H. Ressler, *Adjudicating Custody and Visitation Matters Involving Jewish Families: What You Didn't Know!,* 40 Westchester B.J. 43, 51-57 (2015) (identifying a number of Jewish holidays that may be relevant to custody determinations, including the 12 holidays sought by Eli). On the other hand, insofar as Diane's interpretation is consistent with the default schedule used by at least two departments of the Family Division, it seems that her

interpretation may also be a reasonable one. Indeed, because not all Jewish followers observe all of the Jewish holidays, it could also be reasonable to interpret the term as some other combination made up of more than the four holidays identified by Diane, but less than all of the Jewish holidays. *See id.* at 49, 57-58 (explaining that an attorney representing a Jewish client in a custody matter should ask the client which holidays are celebrated "because every family is different," and noting that the holidays that will need to be considered for a holiday parenting schedule "will vary on a case-by-case basis"). As there are at least two, and likely many more, reasonable interpretations of the term "the Jewish holidays," the district court properly found that the term was ambiguous. As a result, it was appropriate for the district court to construe that term. *See Kishner*, 93 Nev. at 225, 562 P.2d at 496.

*Clarification of the term "the Jewish holidays," as used in the decree*

Having determined that it was proper for the court to construe the term, we now turn to the procedure the court applied in doing so. After determining that the provision needed to be clarified, the district court simply adopted the default schedule offered by Diane without considering what the parties actually intended when they agreed that Eli would have parenting time on the Jewish holidays. But the parties' arguments largely suggest that the court should have applied contract interpretation principles to determine the intention of the parties in reaching the agreement that ultimately yielded the underlying divorce decree.

In considering agreement-based decrees, the Nevada Supreme Court has indicated in some cases that, once an agreement is merged into a decree, a court's application of contract principles, such as rescission,

reformation, and partial performance, is *improper* to resolve a dispute arising out of the decree.[9] *See Vaile*, 128 Nev. at 33 n.7, 268 P.3d at 1276 n.7. Nevertheless, other cases have treated agreement-based decrees as contracts and directly applied contract interpretation principles without addressing the propriety of doing so. *See, e.g., Shelton v. Shelton*, 119 Nev. 492, 78 P.3d 507 (2003). Thus, the extent to which contract principles may apply to interpret an agreement-based decree is somewhat unclear under current Nevada law. In this regard, two cases are instructive.

In *Aseltine v. Second Judicial District Court*, 57 Nev. 269, 271-72, 62 P.2d 701, 701-02 (1936), the parties agreed to reduce the husband's alimony obligation should his income be reduced, and that agreement was merged into the divorce decree. Subsequently, the husband sought a reduction in alimony based on the provision, but the district court denied that request, finding that it would be an impermissible modification of the decree. *Id.* at 272, 62 P.2d at 702.

In reviewing the district court's decision, the Nevada Supreme Court explained that it needed to interpret the decree in order to determine whether the decree permitted the change to the alimony.[10] *Id.*

---

[9]Generally, when the district court approves and adopts the parties' agreement into the decree of divorce, the agreement merges into the decree unless both the decree and the agreement contain a clear and direct expression that the agreement will survive the decree. *Day v. Day*, 80 Nev. 386, 389-90, 395 P.2d 321, 322-23 (1964). And when an agreement is merged into a decree of divorce, it loses its character as an independent agreement and the parties' rights "rest solely upon the decree." *Id.* at 389, 395 P.2d at 322. Merger is not an issue in this case.

[10]At times, the *Aseltine* court spoke of modifying the provision in the divorce decree, but because the court merely construed the decree and modified the alimony based on that construction, it was not accurate to

*continued on next page...*

And in order to interpret the decree, the *Aseltine* court examined the district court's intent, noting that, when there was ambiguity in a decree, the reviewing court could look to the record as a whole and the surrounding circumstances to determine the district court's intent. *Id.* at 273, 62 P.2d at 702. Moreover, the *Aseltine* court came to the conclusion that, in entering the decree, it must have been "the intention of the [district] court . . . that the agreement of the parties should be given effect according to its intent and spirit." *Id.* at 274, 62 P.2d at 702. The supreme court determined that the parties had intended to permit the subsequent change to the alimony. *Id.* at 274, 62 P.2d at 702-03. Thus, the supreme court held that the district court's denial of the husband's request for a reduction in alimony based on that provision was improper. *Id.*

Similarly, in *Murphy*, the parties agreed to alimony terms and their agreement was merged into their divorce decree. 64 Nev. at 442, 183 P.2d at 633. In particular, the agreement provided for a reduced alimony obligation if the husband's military rank reverted from Brigadier General to Lieutenant Colonel. *Id.* at 443, 451-52, 183 P.2d at 633, 637-38. Several years later, the husband's rank reverted to Lieutenant Colonel for one day, after which he was promoted to Colonel, the rank between Brigadier General and Lieutenant Colonel. *Id.* Thereafter, the husband apparently asserted that his alimony should be reduced under the divorce

---

*...continued*

say that the decree itself was modified. *See Aseltine*, 57 Nev. at 272-74, 62 P.2d at 702-03; *see also Murphy*, 64 Nev. at 449-50, 183 P.2d at 636-37 (recognizing that the underlying motion in *Aseltine* did not actually seek a modification of the decree).

decree, and the wife moved the district court to construe the alimony provision as providing that the one-day reversion to Lieutenant Colonel, followed by the promotion to Colonel, was not the type of reversion contemplated by the divorce decree. *Id.* at 443, 183 P.2d at 633. The district court granted the motion for clarification and held that this one-day reversion did not trigger the reduced alimony obligation. *Id.* at 443-44, 183 P.2d at 634.

On appeal, the *Murphy* court held that the district court had properly applied certain interpretation principles to construe the terms of the decree, including the principles that agreements and their resulting decrees "should be construed fairly and reasonably, and not too strictly or technically." *Id.* at 452-53, 183 P.2d at 638. Further, like the *Aseltine* court, the *Murphy* court also noted that an agreement underlying a decree should be construed as meaning what it could be reasonably inferred that the parties intended it to mean. *Id.* at 453, 183 P.2d at 638.

Thus, *Murphy* and *Aseltine* demonstrate that, as in contract interpretation cases, *see Galardi*, 129 Nev. at 310, 301 P.3d at 367 ("Contract interpretation strives to discern and give effect to the parties' intended meaning."), a court that is called upon to clarify the meaning of a disputed term in an agreement-based decree must consider the intent of the parties in entering into the agreement.[11] *See Murphy*, 64 Nev. at 453,

---

[11]Of course, where, as here, the matter concerns child custody, a court must also be mindful of whether the impact of the agreement is in the child's best interest because, "[i]n Nevada, as in other states, the best interest of the child is the paramount concern in determining the custody and care of children." *St. Mary*, 129 Nev. at ___, 309 P.3d at 1033; *see* NRS 125C.0035(1) ("In any action for determining physical custody of a minor child, the sole consideration of the court is the best interest of the

*continued on next page...*

183 P.2d at 638; *Aseltine,* 57 Nev. at 274, 62 P.2d at 702; *see also Harrison,* 132 Nev. at ___, ___ P.3d at ___ (refusing to construe a provision in a stipulated parenting agreement in a manner that would restrict the meaning of the provision because to do so would "risk[ ] trampling the parties' intent" as demonstrated by the language of the written agreement). And in doing so, the court may look to the record as a whole and the surrounding circumstances to interpret the parties' intent. *See Aseltine,* 57 Nev. at 273, 62 P.2d at 702.

In this case, the district court adopted the default schedule, but there is no indication in the record that the parties intended for the default schedule to apply when they entered into their agreement. In particular, nothing in the divorce decree referenced the default schedule, and neither party asserted that they had even been aware of the default

---

*...continued*

child."); *Harrison,* 132 Nev. at ___, ___ P.3d at ___ (noting that the "paramount public policy concern in child custody matters" is "the best interest of the child"). Indeed, as far back as 1927, the Nevada Supreme Court has recognized that a district court could go so far as to reject an agreement reached by parents if the court determined that the agreement was not in the child's best interest. *See Atkins v. Atkins,* 50 Nev. 333, 338-39, 259 P. 288, 289-90 (1927) (affirming the district court's rejection of the parties' agreement to waive child support where the court concluded that the agreement was not for the good of the child), *superseded by statute on other grounds as stated in Lewis v. Hicks,* 108 Nev. 1107, 1111-12, 843 P.2d 828, 831 (1992). Nevertheless, the court's involvement with a parenting agreement should be exercised cautiously in light of the presumption that fit parents act in their children's best interests, *St. Mary,* 129 Nev. at ___, 309 P.3d at 1035, and the principle that the state generally may only limit parental authority when severe concerns, such as protecting a fundamental right or the safety of the parties' child, are at stake. *Harrison,* 132 Nev. at ___, 376 P.3d at ___.

schedule when they came to the agreement that led to the decree, much less that they had meant for that schedule to apply to their arrangement.

Instead, in seeking clarification of the decree, the parties each made allegations suggesting that they had a particular intent when they reached the agreement regarding the Jewish holidays. In particular, Eli's arguments suggested that Diane was aware of all of the Jewish holidays and agreed to give him parenting time on those days because he gave up certain other rights. Diane, on the other hand, disputed Eli's explanation as to why he gave up certain other rights and contended that she was unaware of many of the holidays now sought by Eli because he did not celebrate those holidays during their marriage. These assertions on both sides present factual questions that should have been considered by the district court to address the parties' intentions in giving Eli parenting time on the Jewish holidays.

Despite these factual issues, the district court did not hold an evidentiary hearing or take any evidence to determine the intent of the parties when they formed the agreement. Indeed, nothing in the record before us indicates that the court even attempted to discern the intent of the parties at all. Instead, the court made its decision based upon contradictory sworn pleadings, arguments of counsel,[12] and its own independent Internet research. In light of the foregoing discussion, we conclude the district court should have held an evidentiary hearing to determine the parties' intent at the time they agreed to share parenting

---

[12]We note that arguments of counsel are not evidence. *See Nev. Ass'n Servs., Inc. v. Eighth Judicial Dist. Court*, 130 Nev. ___, ___, 338 P.3d 1250, 1255 (2014).

time based upon the term "the Jewish holidays."[13] *See Nev. Power Co. v. Fluor Ill.*, 108 Nev. 638, 646, 837 P.2d 1354, 1360 (1992) (concluding that an evidentiary hearing may be necessary in order to determine disputed questions of fact); *see also* EDCR 2.21(a) (stating that an evidentiary hearing may be held to resolve disputed factual contentions raised in affidavits and declarations that support motions); EDCR 5.25(b) (stating that factual contentions in family law matters must be presented to the court pursuant to EDCR 2.21). And because the district court failed to resolve the underlying factual issues or ascertain the parties' intent as to what was encompassed by "the Jewish holidays," we conclude that the court erred by interpreting the holiday provision in the decree to include only the first day of the four designated Jewish holidays. *See Shelton*, 119 Nev. at 497, 78 P.3d at 510 (providing that the interpretation of an agreement-based divorce decree presents a question of law); *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000)

---

[13]Eli argues that, if the agreement is ambiguous, it should be construed against Diane because her attorney drafted the divorce decree. *See Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215-16, 163 P.3d 405, 407 (2007) (providing that ambiguities in a contract are generally construed against the drafter). It is not clear from the authority we have considered whether it would be appropriate to apply that particular principle of contract interpretation to a case involving the interpretation of a custody decree. Nevertheless, once the district court takes evidence as to the underlying facts and the parties' intent, it may be able to resolve the ambiguity without resorting to construing it against Diane based on her attorney drafting the divorce decree. Thus, we do not reach Eli's argument that the agreement should be construed against Diane on that basis.

(providing that appellate courts conduct de novo review of questions of law).

## CONCLUSION

As used in the parties' parenting agreement, the term, "the Jewish holidays," is ambiguous. The record, however, does not contain sufficient evidence to discern the parties' intent at the time of their agreement because the district court did not hold an evidentiary hearing to resolve the disputed factual issues. Therefore, we reverse the district court's decision construing the provision and remand this matter to the district court for further proceedings consistent with this opinion.

_____, C.J.
Gibbons

We concur:

_____, J.
Tao

_____, J.
Silver